The People, ex rel. Casper G. Hanawalt, Plaintiff in Error, v. May Small et al., Defendants in Error.

Gen. No. 4,992.

1. Custody of child—*test of determining.* The paramount consideration in determining the question as to whom shall receive the custody of a child, is the best interest of that child.

2. Appeals and errors—*what not considered on review.* Statements of changed conditions since the making up of the record, being without the record, cannot be considered on review.

Petition for *habeas corpus.* Error to the Circuit Court of Grundy county; the Hon. Edgar Eldredge, Judge, presiding. Heard in this court at the April term, 1908. Affirmed. Opinion filed August 10, 1908.

J. W. Rausch, for plaintiff in error.

C. F. Hanson, for defendants in error.

Mr. Justice Dibell delivered the opinion of the court.

Mrs. May Small and her husband, D. S. Small, live in the village of Mazon in Grundy county and have for many years. On November 30, 1893, their daughter, Myrtle M. Small, married Casper G. Hanawalt, the relator, then a teacher in Mazon. Afterwards relator studied medicine, and the married couple then settled in Lisbon, Kendall county, where he practiced medicine. A child, Maude M. Hanawalt, was born September 6, 1895, as the issue of that marriage. On January 8, 1900, Mrs. Hanawalt left her husband, and with her child returned to the home of her parents, and almost immediately began a suit against her husband for divorce on the charge of extreme and repeated cruelty. The suit was contested and tried by a jury, and there was a verdict and a decree granting the divorce, and allowing Mrs. Hanawalt $15 per month alimony, and awarding her the custody of the child for ten months

in the year, and allowing relator to have the child during two specified months while he lived at Lisbon or within twenty-five miles of Mazon. Afterwards Mrs. Hanawalt applied to the court to give her the sole control of the child, and relator petitioned the court to give him the child. There was a hearing, and the sole custody of the child was given to Mrs. Hanawalt, with permission to relator to visit the child two days each month. There were other controversies before the court in that divorce case in reference to alimony, relator being largely in arrears and professing to be unable to pay the alimony. In these matters relator was defeated. Mrs. Hanawalt continued to live at the home of her parents, defendants in error, till her death. Except for the alimony paid by relator, she supported herself and child by work in various clerical positions. She died July 2, 1907, leaving a last will, which was duly probated, by which she gave her property to her mother, May Small, and appointed her mother testamentary guardian of the child, Maude M. Hanawalt. Soon after her death, relator, who had removed to Chicago and was practicing medicine there, came to Mazon and, while professing to be willing to leave the child with its grandparents for the present, declared himself the sole guardian of the child and demanded control thereof. This was refused by the grandparents. He then filed a petition in the Circuit Court for a writ of *habeas corpus* to obtain possession of his daughter. The petition was answered, and there was a hearing, and the court returned the child to the custody of Mrs. May Small, the grandmother and testamentary guardian. The relator has sued out this writ of error to review that judgment.

If Wilkinson v. Deming, 80 Ill. 342, is still the law of this state, then the petition was properly denied. It is contended that later statutes have in effect abrogated that decision. We therefore turn to a consideration of the facts. The best interest of the child is the paramount consideration in a case of this kind. We

have carefully studied this record with that in view. We are of opinion that the effort to show that relator was not a person of proper moral character to have the custody of his daughter, because of his life either at Mazon or Lisbon, is not supported by competent evidence sufficient to establish such a state of facts. While relator resisted the payment of alimony on the ground of his inability to pay it, yet he has testified to the possession of sufficient property now to enable him to care for the child, and there was no testimony to the contrary. In these respects relator's showing is sufficient.

At the time of the hearing relator lived in a flat at 1421 North Clark street, Chicago. The building came to the front of the lot leaving no yard for a playground. He had as his housekeeper a young widow, with one child, a boy. He had his office in one of the six rooms. The widow practiced hairdressing and facial massage for ladies, and occupied for that business another room. There are six saloons within one block of the house and one beer garden. The widow kept a boarding house for the relator before they removed to the present situation, and she is under contract to keep house for him until November, 1908. She testified that her practice in these massage parlors was entirely with ladies and entirely respectable, and there is no contrary proof, nor any proof that the locality is not respectable, except the large number of saloons in the vicinity and the fact that they are frequented by women as well as by men. Relator's counsel states outside the record that since the judgment in the court below relator has made arrangements to live in another part of the city, but it is manifest that we cannot consider these statements.

Mazon is represented in the proof as an entirely respectable village in an agricultural community. Mr. and Mrs. Small are members of the Congregational Church, and are evidently bestowing all proper care upon the child. She is a steady attendant at school

there. Maude will be thirteen years old on September 6, 1908. She has no recollection of having lived in any other place than Mazon nor with any one except her mother and grandparents. She is apparently receiving proper education, and there is a high school in the village. She wishes to remain with her grandparents. Her father never furnished any money to her mother after the separation except to pay the alimony, and had to be forced by the process of the law to pay that. He has given his daughter $7 since the mother's death. The grandparents have not sought to influence her against her father, and are willing that her father should visit her and should aid in directing her education. They have a comfortable property, and the grandfather is in receipt of a steady income of over $1,200 per year, which is of more value in Mazon than the $2,000 or $3,000 per year which the father makes out of his profession in Chicago. Maude is the only heir at law of Mr. and Mrs. Small. After studying the record carefully we conclude that the home of the grandparents in Mazon surrounded by these religious and educational opportunities is a better place for this young girl to live in than massage parlors on North Clark street, Chicago, in the vicinity of numerous saloons and a beer garden, in a house presided over by a hired housekeeper, and the court below did not err in leaving the custody of the child with its grandmother as the mother appointed. If the hearsay testified to by the witnesses called by defendants in error as to the moral character of relator has any real foundation, that would furnish an additional reason for supporting the judgment of the court below, but we have discarded this testimony as being of too doubtful a character. We have also assumed that the testimony introduced by relator shows that his home on North Clark street is not tainted by any immorality or impropriety. Nevertheless, excluding all the suggestions on this subject made by counsel for defendants in error, we are of

opinion that those surroundings in Chicago are much less fit for the home of a young girl at Maude's age than her home with her grandparents. We approve the decision of the trial court.

The judgment is therefore affirmed.

*Affirmed.*