AARON DALBEY, Appellant, *vs.* WILLIAM S. HAYES *et al.*
Appellees.

*Opinion filed April 22, 1915.*

1. APPEALS AND ERRORS—*when a claim that a fiduciary relation existed cannot be considered by the Supreme Court.* A claim that a fiduciary relation existed between the parties to the transaction sought to be set aside cannot be considered by the Supreme Court where no such claim appears to have been made in the trial court, in the pleadings or the proof.

2. EQUITY—*when a deed will not be set aside.* The facts that the grantor was old and in feeble health and that he had hardening of the arteries and a poor memory do not justify setting aside his deed, and if the weight of the evidence sustains the finding of the chancellor that he was mentally competent to make the deed and contract in question, that he gave the orders as to their contents to the attorney who prepared them and had to be convinced of their correctness before he would sign them, a decree sustaining the deed will be affirmed.

APPEAL from the Circuit Court of Vermilion county; the Hon. M. W. THOMPSON, Judge, presiding.

C. E. PILE, O. M. JONES, and W. J. BOOKWALTER, for appellant.

ISAAC A. LOVE, REARICK & MEEKS, and ACTON & ACTON, for appellees.

Mr. JUSTICE WATSON delivered the opinion of the court:

The bill in this case was filed by Fred Dalbey, as next friend for Aaron Dalbey, and alleged that said Aaron Dalbey was eighty-two years of age; for five years prior to the filing of the bill, because of feeble physical condition as well as feeble mental condition, he had been unable to transact the ordinary business affairs of life, and for said period Pearl E. Wiggins, a banker of Homer, Illinois, had conducted his business for him; said Dalbey was the owner of and resided upon a tract of land consisting of seventy-

three acres in Vermilion county, near Homer, for a period of fifty years; he was the owner in fee of said land, free of encumbrance, except for a certain instrument here sought to be set aside; he was a widower, had no child, children or descendants thereof, and no heirs other than some nephews and nieces; on October 17, 1912, while the said Dalbey was mentally incompetent to transact ordinary business affairs, the appellee William S. Hayes fraudulently, and for the purpose of cheating and defrauding the said Dalbey, coaxed and persuaded him to convey said land to said Hayes for a purported consideration of one dollar; the land was of the value of $17,000; at the same time, without any good or valuable consideration, said Dalbey turned over all his personal property to Hayes, the same being of the value of $3000; as soon as said deed was delivered to Hayes he caused it to be recorded, thereby placing a cloud upon the title of Aaron Dalbey to said land; immediately thereafter said Hayes took possession of said Dalbey and has since kept him at the home of said Hayes in Indiana. The bill further alleges that on the 12th day of May, 1913, three days prior to the filing of the bill in this cause, said Hayes transferred and conveyed said real estate to William Becker and Charles M. Brown; said Becker and Brown are not purchasers in good faith, for a valuable consideration, but took said conveyance with full knowledge of the rights of Dalbey and with full knowledge that said Hayes did not have good title. The prayer of the bill is that Becker and Brown be enjoined from conveying the premises to other persons and that the premises be re-conveyed to said Aaron Dalbey and the personal property returned to him. The answer of Becker and Brown neither admits nor denies the allegations of the bill concerning the transactions between Dalbey and Hayes; admits the conveyance to them, and alleges they are purchasers for a valuable consideration, without notice and in good faith. Hayes and his wife, who are the remaining

defendants to the bill, in their joint answer admit the age of Dalbey but deny his mental incompetency; admit the execution of the deed to Hayes, but deny that Dalbey was at the time of its execution and delivery incompetent to transact business. As a consideration for the deed from Dalbey to Hayes a written contract is set forth between Dalbey and Hayes, wherein it is provided that in consideration of the conveyance of the land and the transfer of the personal property said Hayes agreed to keep and care for Dalbey as long as he should live. Thereupon issue was joined and trial had and a decree entered dismissing the bill for want of equity. This appeal followed.

As a matter of history relative to this litigation, it might be well to state it is disclosed by this record that a bill of like import (except as to the transfer to Becker and Brown) was filed in said circuit court on the 12th day of November, 1912. A motion was made to dismiss the suit on account of the fact that both Dalbey and the next friend were non-residents of this State and that no cost bond had been filed. On March 4, 1913, a cross-motion was made for leave to file a cost bond, and the same was granted. Later, issue was joined and the cause referred to a special master in chancery to take and report the proofs. Later still, no evidence having been taken, a motion was made by the defendants to the bill to rule the complainant to close his evidence before the special master by April 1, and still later an extension of thirty days was allowed for this purpose. On the 10th day of May, 1913, a motion was granted dismissing the bill for failure to comply with the rule to close the evidence for complainant. On May 13, 1913, the conveyance was made by Hayes to Becker and Brown, and May 15, 1913, the bill herein involved was filed.

In this court it is contended on the part of appellant the decree of the circuit court dismissing the bill, upon a hearing, for want of equity should be reviewed upon the

facts; and in this connection it is said a fiduciary relation existed between Aaron Dalbey and William S. Hayes in respect to the business transacted between them, which relation would shift the burden of proof, making it incumbent upon Hayes to establish, by a preponderance of the evidence, his defense to the bill. Appellees, on the contrary, assert there was no claim of a fiduciary relation made by the bill or relied upon in the trial of the cause in the circuit court, and in consequence thereof appellant cannot be permitted to make that contention here. We have looked carefully into the record and examined both bills filed, as well as the evidence heard upon the trial under the second bill, and we fail to find there was any claim of the fiduciary relation before the cause reached the Supreme Court. We therefore, as is well known, cannot now consider that contention in disposing of the appeal. *Strodtmann* v. *County of Menard,* 158 Ill. 155; *Kirchman* v. *People,* 159 id. 265.

On October 17, 1912, Dalbey and Hayes entered into a written agreement which provided, in substance, for the conveyance by Dalbey to Hayes of the farm of the former and the transfer of all his personal property, in consideration that Hayes should provide Dalbey a suitable home and do whatever should be necessary to properly care for him, and pay his necessary expenses, medical attention and nurse hire during life. The instrument further provided for the revocation of a power of attorney previously given to Pearl E. Wiggins for the management of Dalbey's business, which power of attorney was made May 20, 1908. In pursuance of that agreement a deed was on the same day made, executed, delivered and recorded, being the deed here sought to be annulled, and shortly thereafter Hayes took over from Wiggins the Dalbey bank balance of about $1200 and assumed control of the farm and of all of the personal property. Since then Dalbey has been a member of the Hayes family in Indiana, at a point not remote from Danville, Illinois.

Eight witnesses were called and testified in behalf of appellant and twenty-nine for appellees on the question of Dalbey's mental capacity, some of them, also, upon other questions. We do not attach any importance to the number of witnesses called, alone, but are inclined to regard as important the credit given their testimony by the trial court, which saw and heard them testify and was better able than this court to judge of the credibility of each. *Dyas* v. *Dyas,* 231 Ill. 367; *Beall* v. *Dingman,* 227 id. 294; *Pinkstaff* v. *Steffy,* 216 id. 406; *Heyman* v. *Heyman,* 210 id. 524; *Ehrich* v. *Brunshwiler,* 241 id. 592.

The position taken by the appellant that his witnesses, although few in number, are the persons who best knew him and were most closely associated with him in the few months immediately preceding the execution of the deed in question, and therefore entitled to more credit than the witnesses who knew him less intimately, is sound, and causes us to scrutinize the testimony of those witnesses with much care.

Pearl E. Wiggins testified he was a banker and for four or five years had transacted Dalbey's business under power of attorney. He said, in his judgment Dalbey was not competent in October, 1912, to comprehend and transact ordinary business; but Wiggins transferred the $1200 in bank to Hayes in pursuance of the Dalbey-Hayes contract, which circumstance indicates he then thought Dalbey competent to enter into the contract. Also, it appears that Wiggins continued, up to October, 1912, to act by virtue of the power of attorney, which he must have known would be by operation of law revoked at any time Dalbey should become incompetent mentally to transact business, and he made from time to time reports to Dalbey of the business he was transacting, and testified that Dalbey understood and comprehended each of said reports.

Omer Lowell, the nearest neighbor of Dalbey and who saw him frequently each week, testified Dalbey was incom-

petent to transact ordinary business, but testified also to frequent petty transactions with him from week to week, which show conclusively he then regarded him competent to attend to the trifling affairs which made up his daily round of life. This witness also said he "would not take the old man and keep him the balance of his life for the farm."·

Mrs. Sarah J. Peet was housekeeper for Dalbey from May, 1911, until he went to Hayes' home, in October, 1912. As we understand her evidence, she bases her statement as to his mental incompetency upon his physical infirmities, his occasional failures in memory, and the fact he had another man transacting his business. It seems he had considered conveying his property to her upon a consideration similar to the one mentioned in the Hayes contract but upon advice had decided not to do so.

Charles Heselden based his opinion on the fact that Dalbey was "eighty-four or eighty-five years old, and feeble."

Daniel Oakes found Dalbey forgetful but gave no opinion as to his mental capacity.

Reuben Cusick had been in personal attendance upon Dalbey in 1912 and gave no opinion as to his mental capacity, although the incidents he related rather proved the theory of appellees upon that subject.

Ora Moon, a bar-tender, had lived at Dalbey's residence in 1910 and parts of 1909 and 1911. He thought him not capable of transacting business, but nevertheless went to the bank with him, in Homer, and there entered into a written contract with him for his maintenance and the rent of his farm. He said Dalbey "wouldn't sign nothing for nobody," but referred those who had business with him to his agent, Wiggins.

Mrs. Moon's testimony was to the same effect, and she and her husband testified to an incident wherein, owing to his defective eyesight, Dalbey kept tally of the re-payment to himself of a number of bushels of borrowed corn by

shelling some corn from an ear and counting off a grain for each bushel measured back to him.

We shall not discuss the evidence of the witnesses for the appellees further than to say more than twenty of them knew Dalbey well and considered him competent to transact ordinary business, some before, some during and some after October, 1912. From the evidence of the attorney who prepared the contract and deed it is apparent Dalbey was giving the orders as to their contents and had to be convinced of their correctness before he would sign them. We are impressed, as the chancellor may have been, with the testimony given by James Davis, who had known Dalbey since 1840, and who was himself eighty-six years old. He saw Dalbey and conversed with him the last time in August, 1912, when "he appeared to be just as rational as anybody."

All of the evidence shows Dalbey was old and infirm, had hardening of the arteries, was subject to "falling spells," was almost blind and had partially lost the power to control his bodily functions. We are inclined to believe he was strong-willed and fully aware, at all times, of what he wanted done with and about his property. Hayes is a nephew of the deceased Mrs. Dalbey, through whom much of the property was acquired by Dalbey, and the proof shows he is solvent and good for the contract he made. Dalbey's relatives were nephews and nieces living in distant States, and with whom he was not, apparently, in close sympathy.

We are not convinced there is a preponderance of evidence showing mental incapacity in Dalbey to make the deed and contract in question, and such incapacity is not to be inferred from old age or feeble health, even when combined with a defective memory. (*Kimball* v. *Cuddy*, 117 Ill. 213; *Riordan* v. *Murray*, 249 id. 517; *Geiger* v. *Bardwell*, 255 id. 320; *Francis* v. *Wilkerson*, 147 id. 370.) Arterio sclerosis does not, of itself, show Dalbey incompe-

tent to convey his property. *Brainard* v. *Brainard,* 259 Ill. 613; *Sears* v. *Vaughan,* 230 id. 572.

The decree of the circuit court being in accord with the weight of the evidence adduced, it is affirmed.

*Decree affirmed.*