## The People of the State of Illinois ex rel. Harvey C. Swift, Plaintiff in Error, v. Gust Nelson, Defendant in Error.

### Gen. No. 7,406.

1. PARENT AND CHILD—*sufficiency of evidence of unfitness of father for custody of eight-year-old son.* In a habeas corpus proceeding brought by a father to secure the custody of his son, eight years of age, against defendant as superintendent of a children's home in which the child was placed by the mother before her death, where it appeared that the father abandoned the child and its mother when the child was about six weeks old and since that time had never lived with them, supported them, visited or had anything to do with them; that the mother was unable to provide sufficient support for the child and had been assisted by public and private charity; that the father was frequently drunk and had been arrested and was, at the time of the trial, on probation under a conviction of driving an automobile while intoxicated, a finding that he was not a fit person to have the custody of the child was warranted and will not be disturbed.

2. PARENT AND CHILD—*sufficiency of evidence to sustain finding against father on habeas corpus for custody of minor son.* Where it appeared in a habeas corpus proceeding brought by a father to procure the custody of his son, eight years of age, that the father was not a proper person to have custody of the child; that the home of the father's parents to which it was proposed to take the child was one to which the police had been called to quell drunken disturbances; that the children's home, of which defendant is superintendent and in which the child is living, having been placed there by the mother shortly before her death, is supported by the conference of the church to which the mother belonged and is well located and equipped to care for the children in its charge; and that the child is attending public school, Sunday school and church and is contented, happy and well behaved, the trial court properly refused to grant the writ of habeas corpus.

Error by plaintiff to the Circuit Court of Winnebago county; the Hon. EARL D. REYNOLDS, Judge, presiding. Heard in this court at the October term, 1924. Affirmed. Opinion filed January 31, 1925. *Certiorari* denied by Supreme Court (making opinion final).

ROY F. HALL, for plaintiff in error.

FISHER, NORTH, LINSCOTT & GIBBONEY, for defendant in error.

MR. JUSTICE PARTLOW delivered the opinion of the court.

On February 4, 1924, plaintiff in error, Harvey C. Swift, filed his sworn petition for a writ of habeas corpus in the circuit court of Winnebago county against defendant in error, Gust Nelson, who was the superintendent of the Children's Home of the Illinois Conference of the Swedish Evangelical Covenant Church of America, located at Princeton, Illinois. The petition alleged that Chester Adelbert Swift was the son of plaintiff in error and was about eight years old; that he was also known by the name of Marshall Swift; that the mother of the child was dead; that the mother in her lifetime had the care and custody of the child and that the defendant in error unlawfully detained the child; that plaintiff in error was a fit person to have his care and custody. The writ was issued and served on the defendant in error, who made his return in which he alleged that he had been the custodian of the child from October 21, 1923; that the sole occasion of his having the custody was that he was the superintendent of said home which was organized for the purpose of caring for homeless and destitute children; that the mother of the child before she died placed the child in the home; that the father had contributed nothing to his support while in the institution, had never visited him, had never written him, had never shown any interest in him, and the child had no knowledge of his father; that the mother died shortly after he was placed in the home; that the mother had been affiliated with the church that was operating the home. It was alleged upon information and belief that the father, because of his habitual drunkenness, idleness, and association with dissolute persons, was not a fit person to have the

care and custody of the child. Upon issue being joined there was a hearing before the court and a finding that the plaintiff in error by reason of his habits and associations was not a fit and proper person to have the care, custody and control of the child, and that it would be for the best interests of the child that he be returned to the home and remain in its custody, and an order was so entered. To review that judgment a writ of error has been prosecuted from this court.

The sole question upon this record is whether the evidence supports the finding and judgment of the trial court. The evidence shows that plaintiff in error was thirty-eight years old, and for the past fourteen months had been employed in a factory. All of his life, with the exception of a few months during which he lived with his wife, plaintiff in error had lived with his father and mother in the City of Rockford. The family consisted of the plaintiff in error, his father, mother, a brother Clarence, forty-one years old, and the latter's adopted daughter, ten years old. For a few months after his marriage plaintiff in error and his wife lived at the home of his parents. They then moved into the country where plaintiff in error worked as a farm hand from March until August, during which time the child was born. Plaintiff in error left the farm in August, apparently on account of drunkenness. At that time he deserted his wife and child and from that time until the day of the trial he never lived with them or supported them, visited them, or had anything to do with them. At the time plaintiff in error left his wife in August, the evidence shows the child was about six weeks old. The mother and child went to the home of a relative where they remained until Christmas. The mother then went to the country where she remained until the next spring. She then returned to the home of her relative and was able to do certain housework until

the child was old enough to stay with other people.
When the child was about a year old the mother left
him in the care of his grandmother and the mother
began work in a factory.  The grandmother had the
care of the child until just before the mother's death,
which was on December 5, 1923.  She testified she
never saw the plaintiff in error for eight years prior
to his wife's funeral, and that he had never taken any
interest in the child.  On October 21, 1923, upon the
request of the mother, the child was placed in the
home of which defendant in error is superintendent.
The evidence showed that during all these years the
mother and grandmother were unable to provide
proper support, and were assisted by the county au-
thorities, and the church society in question of which
the mother was a member.  Within about sixty days
after the death of the mother the plaintiff in error
sought to get the child through this proceeding.

Not only did plaintiff in error abandon and neglect
his child and its mother, but there is a serious ques-
tion with reference to his habits and fitness to have
the custody of the child.  There is evidence tending to
show that for many years he had been addicted to the
excessive use of intoxicating liquor and has associated
with drunken, idle and dissolute companions.  He ad-
mits that he formerly used intoxicating liquor but
insists that he is now a sober, industrious man, and is
entitled to the custody of his child.  At the time he
deserted his wife, he was discharged from his posi-
tion as a farm hand on account of intoxication.  Since
that time he has on several occasions been under the
influence of liquor on the streets of Rockford, has
been boisterous, has been ordered to go home by the
police, and has been arrested.  The police have been
called to his father's home, where he resided, to quell
disturbances.  Officer Anderson, of the Rockford
police force, testified he saw plaintiff in error drunk
three or four months before the trial.  There was evi-

dence that he was drunk at a dance just before the death of his wife and was put out of the hall on account of his drunken condition. On September 23, 1923, in Winnebago, he was under the influence of liquor together with two other men, and had an accident with his automobile in which he damaged another car. He was arrested and pleaded guilty in the county court to operating an automobile while under the influence of liquor. He was released on probation by the court on condition that he would sell his car, and he was on probation at the time of the trial in this case. He claims to be a sober and industrious man, and offered testimony as to the places where he had been employed, and how long he had worked, and yet at the time of the trial all the property he owned was $25 or $30 he had in his pocket, and pay due him for two weeks' work, amounting to about $45, and $100 which he had paid upon a vacant lot covering a period of several years, making a total of $175 worth of property which was all he had to show for his alleged years of industry and sobriety.

Evidence was offered for the purpose of showing that the home of the father and mother of the plaintiff in error where this child was to be taken in case the writ of habeas corpus was granted, was a fit and proper place for the child to be raised. We refrain from commenting on this evidence to any great extent for the reason that the father and mother of plaintiff in error were not the parties who were attempting to secure the custody of his child and the condition of their home was not in controversy except incidentally as the child might possibly be taken there to reside. If plaintiff in error was not a fit person to have the custody the court properly denied the writ. In passing, however, we might observe that the evidence shows that the police had been called to this home on more than one occasion to quiet disturbances when there had been drinking and fighting  On one

occasion a man named Conley had his eye knocked out at that place in a drunken fight, and the evidence tends to show that the father and brother of plaintiff in error were engaged in the fight. The evidence shows that Clarence Swift, a brother of the plaintiff in error, lived at that house. He was separated from his wife, and he also was addicted to the excessive use of intoxicating liquor. All of these facts were probably taken into consideration by the court in reaching a conclusion in the case.

On behalf of defendant in error the evidence shows that the present home of the child is supported by the conference of the church. It is located in a brick building large enough to accommodate thirty-five children, located on twenty acres of land on the outskirts of Princeton and has a playground of three acres. There are now twenty-seven children in the home, taken care of by four ladies and the defendant in error. An addition is now being built at a cost of $75,000 to $100,000 and, when completed, one hundred children can be accommodated. The child in question had been in that home about five months up to the time of the trial. He was in the second grade in the Princeton schools. He attended church and Sunday school, and was contented, happy, and well behaved. He was in that home as the direct effort of his mother and grandmother who had raised him and cared for his needs since infancy.

There can be no controversy as to the law applicable to the facts here presented. The father is the natural guardian of his infant child. *Perry v. Carmichael*, 95 Ill. 519; *Steele v. Hohenadel*, 141 Ill. App. 201; *People v. Weeks*, 228 Ill. App. 262. The father's right is superior to the right of any other person if he is fit to have such custody and is so circumstanced that he can provide the necessities of life and the proper maintenance and education of the child. *Cormack v. Marshall*, 211 Ill. 519; *Sullivan v. People*, 224

Ill. 468. If the father is not a fit person to have the custody of his child, or is not so circumstanced that he can provide the necessities of life and properly maintain and educate the child, then his rights must yield to the interests of the child. What is for the best interest of the child is the paramount question in all cases of this kind. *Cowls v. Cowls,* 8 Ill. 435; *People v. Small,* 142 Ill. App. 422. Where the trial court saw and heard the witnesses it is better able than the Appellate Court to judge of the credibility of each. *Dalbey v. Hayes,* 267 Ill. 521. Findings by the trial court after having seen the witnesses and heard them testify will not be disturbed by this court on appeal unless it can be said that the findings of the trial court are clearly and palpably erroneous. *Ehrich v. Brunshwiler,* 241 Ill. 592. Where the evidence is in conflict the court on appeal will not disturb the judgment unless it is clearly against the weight of the evidence. *Moneta v. Hoffman,* 249 Ill. 56.

From our examination of the evidence in this case we are impressed with the fact that during all of the life of this child plaintiff in error has paid no attention to him, and has abandoned him and left him to get along as best he could; that plaintiff in error is not a fit and proper person to have the care and custody of this child; that the child is in a good home and is receiving proper treatment; that it is for the best interests of the child that he should remain where he is, and that the trial court properly refused to grant the writ of habeas corpus.

The plaintiff in error insists that the defendant in error will permit the child to be adopted by some third party and for that reason the writ should have been granted. Under the statute the father would be a necessary party to adoption proceedings, and at that time he would have ample opportunity to appear and resist such adoption if he did not think it best for the interests of the child.

We find no reversible error, and the judgment will be affirmed.

*Judgment affirmed.*