Lyle T. Manley, Plaintiff-Appellant, v. Karl O. Geng et al., Defendants-Appellees.

**Gen. No. 10,836.**

Second District.

July 29, 1955.

Rehearing denied September 13, 1955.

Released for publication September 14, 1955.

William Lathrop, of Rockford, and MacLeish, Spray, Price & Underwood, of Chicago, for plaintiff-appellant; William Lathrop, of Rockford, and Joseph A. Dubbs, and Wendell J. Brown, both of Chicago, of counsel.

Miller, Thomas, Hickey & Collins, of Rockford, for defendants-appellees; L. C. Miller, and William E. Collins, both of Rockford, of counsel.

MR. JUSTICE EOVALDI delivered the opinion of the court.

Plaintiff-appellant brought suit in equity seeking injunctive relief against the continuing use of the name "Manley Sand Company" by the defendants, and seeking damages.

The trial court found that there was no fraudulent conduct or wrongful acts by any of the defendants in the use of the name "Manley Sand Company" or "Manley Sand Corporation" and ordered and decreed that the complaint be dismissed for want of equity, plaintiff to pay costs.

The case is the outgrowth of a contract of sale between plaintiff and his brother, Dwight E. Manley, who was a defendant in the original suit, and on the suggestion of his death, the case was continued against the

executor, Lois E. Manley. In the contract, dated October 13, 1952, plaintiff sold to his brother, Dwight E. Manley, the plaintiff's interest in a partnership business operated by plaintiff, his brother and assignee, Dwight E. Manley, and his mother, May B. Manley.

Lois E. Manley, as executor of the will of Dwight E. Manley, assignee of the interest of plaintiff in the partnership, was dismissed from the case at the end of the hearing. That left in the case the following: May B. Manley, the only person who was a partner at the time the plaintiff sold his interest; her associates in a new partnership formed after the plaintiff sold his interest; and the employees of such new partnership.

Plaintiff's theory is that he had a proprietary one-half interest, as one of the partners in Manley Sand Company, in the partnership property of the Manley Sand Company and that a part of such partnership property at the time he sold out in October 1952, was its good will, which included its name "Manley Sand Company" which he reserved when he sold the sales business, and which he never relinquished. He further claims that under Illinois statutory law neither he nor his ex-partners could use the partnership name "Manley Sand Company" after the sale in October 1952, without each other's consent. Also such partnership property right of use of the name "Manley Sand Company" could not be appropriated by anyone without adequate redress in equity inasmuch as plaintiff had no adequate remedy at law.

The name "Manley Sand Company" has been used by various partnerships for many years. On February 1, 1926 plaintiff and his father, Edward B. Manley, who died about a year later, formed a partnership under the above name, each having a one-half interest in the business. After the father died, his interest in the partnership became vested in his widow, the defendant, May B. Manley. Under date of January 1, 1944, the mother, May B. Manley, sold to the son, Dwight E.

8

Manley, one-half of her interest in the partnership business.

Under date of August 7, 1945, plaintiff with his mother and said brother, Dwight E. Manley, entered into a new partnership agreement, with interests as follows: 50 per cent to plaintiff; 25 per cent to May B. Manley and 25 per cent to Dwight E. Manley. This agreement recognized the above name by providing: "Whereas May B. Manley, Lyle T. Manley and Dwight E. Manley have been doing business as co-partners under the name and style of Manley Sand Company of Rockton, Illinois, for the past several years." It further recited that it had become necessary and desirable to enter into a written agreement fixing the rights of the partners in the event of dissolution, either voluntary or by death; that said partnership should continue in effect for a period of ten years or as much longer as the partners may desire and can mutually agree upon. The agreement further provided that the management of the partnership business "shall continue in Lyle T. Manley and Dwight E. Manley as heretofore, but this contract shall replace and be substituted for any and all previous contracts made and entered into by and between the parties hereto, either oral or written." Under its terms plaintiff and Dwight E. Manley were entitled to a salary of 30 per cent each of the net profits of the partnership with the balance of profits divided one-half to plaintiff and one-fourth each to said May B. Manley and Dwight E. Manley.

The agreement further recited that as of January 1, 1944, the capital account of the partnership had been contributed as follows: "Lyle T. Manley, $30,000.00; May B. Manley, $15,000.00 and Dwight E. Manley, $15,000.00," which was changed at a later date to $60,000.00, $30,000.00 and $30,000.00 respectively.

In said 1945 agreement it was provided:

"For the purpose of this agreement in any transfer of partnership interests, either between the partners

or after the death of a partner, the good will of this partnership is established at the sum of Twenty Thousand Dollars ($20,000.00), which, in the judgment of the partners, is the fair and reasonable worth of such partnership in addition to the present book value which does not include any good will.

"The ownership of such good will shall be the same as in the net property of the partnership. . . ."

Plaintiff and Dwight E. Manley, with their mother, as partners, operated the industrial sand sales business under the said name of "Manley Sand Company" under the August 7, 1945, agreement until October 1952, when plaintiff sold out to Dwight E. Manley under an agreement to sell dated October 13, 1952, and a supplementary sales agreement dated October 27, 1952, in each of which he reserved his rights in the good will of the business.

At the time of the contract of sale by plaintiff to his brother, Dwight E. Manley, on or about the date it bears of October 13, 1952, Dwight E. Manley was ill in Arizona and the contract was executed there.

The October 13, 1952, agreement provided:

"That, Whereas, the Manley Sand Company, is a partnership, . . .

"The seller, for and in consideration of the covenants and agreements on the part of the buyer hereinafter contained, agrees to sell and convey unto the buyer and the buyer agrees to buy from the seller his interest in the Manley Sand Company, a partnership,

. . .

"The buyer agrees to pay the seller, in cash, the book value of his interest in the Manley Sand Company, a partnership . . .

"It is further agreed by and between the parties hereto that the seller is not selling his good will in the above partnership, which has been set up at a book value figure of Twenty Thousand Dollars ($20,000.00) nor is he selling his personal right to engage in the

10

industrial sand business in all its aspects but he is specifically reserving to himself this right. However, the seller agrees not to solicit the employment of any of the employees of the Manley Sand Company, a partnership, if he should engage in this business, either personally or as a partner or a corporation, provided, however, that he may hire such employees, if they seek employment from him.

"It is further agreed by and between the parties hereto that the sale of the above interest in the partnership will be consummated on or before thirty (30) days after the date hereof, and at the same time that the seller disposes of his stock in the Portage-Manley Sand Company, an Illinois corporation."

Under the supplemental agreement dated October 27, 1952, plaintiff sold, assigned and transferred to Dwight E. Manley all of his interest in "said Manley Sand Company except his interest in the good-will . . ." and "The party of the second part (Lyle T. Manley) specifically recites that he is not selling his interest in the good-will of the partnership." It is interesting to note that in this latter agreement, the name of "Manley Sand Company" is also used four times.

█ In Decatur Lumber & Manufacturing Co. v. Crail, 350 Ill. 319, our Supreme Court holds that the object of construction of contracts is to ascertain the intention of the parties. In Domeyer v. O'Connell, 364 Ill. 467, at page 470, the court states:

"That intention is to be determined from the language used in the instrument and not from any surmises that the parties intended certain conditions which they failed to express."

█ Plaintiff contends that because he reserved his interest in the good will of the partnership, this carried with it the right to prevent others from using the name of Manley Sand Company. This does not neces-

11

sarily follow. The name is not the only element which goes into the making up of the species of property known as good will. The good will of a business may be defined to be the advantage which it has from its establishment or from the patronage of its customers, over and above the mere value of its property and capital. 40 Am. Jur. (Partnership), Sec. 109, page 203. It is admitted by plaintiff in his brief that name is a "part" of good will.

■ There is nothing in the contracts of sale prohibiting the use of the name by the continuing partners. A reading of same indicates that the continued use of the name by the remaining partners was intended, for the contracts each specifically mentioned the name four times; and, why would plaintiff agree that he would not solicit the employment of any of the employees of the "Manley Sand Company, a partnership, if he should engage in this business"? This definitely was looking to the future. And, why would all the parties agree that plaintiff might hire *such* employees, if they sought employment from him? As stated in the Domeyer case, supra, at page 470:

"An implied intention is one necessarily arising from language used or a situation created by such language. If such intention does not necessarily arise it cannot be implied. On the other hand, absence of a provision from a contract is evidence of an intention to exclude such provision. Certainly, the fact of such absence cannot, of itself, give rise to an implied intention to include it."

A partner cannot be deprived of his interest in the good will of his partnership without his consent. Ch. 106½, Ill. Rev. Stats. (1953), Par. 9 (3b) and Par. 18 (h) [Jones Ill. Stats. Ann. 97.09, subd. (3) (b), 97.18, subd. (h)]. By his sale plaintiff disposed of his interest and right to manage and control the partnership, his right to sign checks, borrow money or other-

12

wise handle the financial affairs of the partnership, and the buyer, Dwight E. Manley, agreed to assume immediately the handling of all the financial affairs of the partnership. The remaining partners were free to use their interest in the Manley Sand Company in any manner in which it might serve their purpose, so long as they did not violate any provisions of the contracts.

■ There is another significant factor respecting the intent of the parties as expressed in the 1952 contracts which cannot be ignored. These contracts were entered into by two of the three partners operating under the name Manley Sand Company by virtue of the 1945 contract. The third partner, May B. Manley, mother of the other two, did not enter into the 1952 contracts and, of course, they are not binding against her. Yet her interest cannot be ignored. Without her consent, how could plaintiff and the other partner enter into an agreement the intent of which was to prevent the further use of the name Manley Sand Company?

We may gain another insight of the intent of the parties to the 1952 contracts, wherein plaintiff withdrew from the partnership, by referring to the withdrawal provisions set out in the then existing 1945 partnership agreement. Paragraph 7 of that agreement provides as follows:

"Inasmuch as the partners desire that this business be continued until there be only one surviving member of the present partnership, the partners do hereby mutually agree . . .

"In the event either Lyle T. Manley or Dwight E. Manley desire to retire from said partnership he shall notify the other in writing of such desire and the other shall have an option for a period of thirty (30) days after such written notice to purchase said partnership interest of such retiring partner at a figure which shall equal the book worth of the interest of the retiring

13

partner's interest and good will as hereinafter established.

"In the event a partner retire, the remaining partners hereby agree to continue the said partnership and to save and keep harmless the retiring partner from any and all liability on account of such partnership."

In conformity with the provisions of the above-quoted paragraph, Dwight Manley contracted in the 1952 agreements to release the plaintiff from all partnership liabilities, hereinbefore or hereinafter disclosed, to indemnify plaintiff from any loss or liability whatsoever growing out of said partnership, and in general, to hold him harmless from all partnership obligations. These were valuable considerations furnished by one of the remaining partners to the selling partner, the plaintiff. Had the parties intended to deviate from the terms of the 1945 agreement, such deviation should have been expressly spelled out and certainly cannot be read into the 1952 contracts by implication.

■ ■ It was for the trial court to pass upon the credibility or weight of the testimony of the witnesses. There was evidence in the record which justified the trial court's finding and judgment. The general rule in equity cases is that great weight should be attached to the findings of the chancellor, and that they will not be reversed unless clearly against the weight of the evidence. Sohio Corp. v. Gudder, 375 Ill. 622; Flynn v. Troesch, 373 Ill. 275; Dalbey v. Hayes, 267 Ill. 521; Zimmerman v. Zimmerman, 242 Ill. 552; Beall v. Dingman, 227 Ill. 294; Glasser v. Essaness Theatres Corp., 346 Ill. App. 72.

■ From a careful consideration of the whole record, we are of the opinion that the evidence amply justifies the decree of the circuit court, and it is, accordingly, affirmed.

Decree affirmed.

DOVE, J., concurs.