JOSEPH M. CORMACK

*v.*

THOMAS MARSHALL.

*Opinion filed October 24, 1904.*

1. HABEAS CORPUS—*order of court as to custody of child is a final order.* In *habeas corpus* proceedings for the custody of a child the order of the court having competent jurisdiction is a final order, which may be reviewed on writ of error, and is *res judicata* on subsequent application to another court, where the facts are the same and there has been no change in the conditions existing when the order was made. (WILKIN, CARTWRIGHT and SCOTT, JJ., dissenting.)

2. PARENT AND CHILD—*parent's right to custody of child is paramount.* The right of a parent to the custody of his children is superior to that of any other person when the parent is a fit person to have the custody and is able to provide them with the necessaries of life and administer to their requirements according to their best interests.

3. SAME—*financial interest of child is not controlling.* The interest of the child, which is the controlling element in the decision of the court as to the question who shall be entitled to his custody, is not his financial interest alone, although such interest is not to be disregarded.

ORIGINAL petition for *habeas corpus.*

A. D. EARLY, for petitioner.

CARNES, DUNTON & FAISSLER, and CLIFFE & CLIFFE, for respondent.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

This is an original proceeding in this court upon a writ of *habeas corpus* issued upon the petition of Joseph M. Cormack for the custody of his infant son, Kimball James Marshall Cormack, in which it is alleged that said son is illegally detained by the respondent, the grandfather of said child.

The respondent, by his return, admits the possession of the child, and avers that he is legally entitled to have and keep said child in his custody by virtue of an order of the circuit court of DeKalb county, entered at the October term, 1903, of said court, upon a *habeas corpus* proceeding by the petitioner. in this cause against this respondent for the custody of this same child; that upon a writ, return, traverse and full hearing upon both the facts and law before said court, it was found that it was for the best interests and welfare of said child that the respondent have the care, custody and control of him, and it was so ordered, and that said child was remanded to the care, custody and control of the respondent. The petition, return and record of said former proceeding are set out in the return *in hæc verba,* and it is further averred therein that "there has been no change in the situation of said child or the circumstances governing and controlling the question as to the right of his custody since said hearing and order in said circuit court," and said former proceeding and order are pleaded in bar as *res judicata.* Respondent also re-asserts and re-pleads the facts and circumstances set forth in his return to the former writ, wherein are stated at large the circumstances under which said child first came into his custody and control, and why he did retain, and deemed himself still entitled to retain, said child. Petitioner answers the return as made to the writ in this court and admits the proceedings had in the circuit court; does not deny that there has been no change in the conditions, etc., as they existed at the time of the former suit, but says the order of the circuit court was not warranted and denies that it can operate as *res judicata.* Petitioner then

traverses and controverts some of the allegations of fact as to the manner and claim under which respondent originally obtained the custody of said child and the circumstances under which he retained the same. The cause was referred and the evidence taken and reported, and the cause heard by this court upon written testimony and printed and oral arguments by counsel for both parties.

From the view we feel impelled to take of the law in this case it would seem unnecessary to enter into a discussion of the evidence, as it might affect the rights of the parties upon a hearing of the case upon its merits. We will therefore but give a brief outline of the more salient matters.

The petitioner was born in 1855, and at twelve years of age began to work to support himself. He was born in Kansas and in his youth attended the common schools of that State. By his labors and industry, and without other assistance, he was enabled to attend the State Agricultural College of Kansas five terms, beginning in 1872. After teaching school for awhile he entered the Northwestern University, at Evanston, where he remained seven or eight years, graduating from the preparatory department, the university proper and the Garrett Biblical Institute, where he fitted himself for service in the ministry of the gospel, receiving the order of elder in 1883. In one capacity or another he has been preaching since 1877. While at Evanston he met Jennie Marshall, the daughter of the respondent and the classmate of the petitioner. They were married in 1884. By this union two children are living,—Joseph, eleven years old, and Kimball, the child now in controversy, who was born in February, 1900. The mother of Kimball, prior to his birth, entered the Presbyterian Hospital of Chicago for the purpose of confinement, and after the birth of Kimball died on March 3, 1900, in that hospital. Following the death and funeral services of his wife petitioner received notice of the illness of his father in Kansas, and immediately went to his father, who died on the 19th day of the same month. The child, Kimball, was left in the hospital upon the suggestion of those in charge

of it, that it could be better taken care of there. Though no well-defined ailment developed in the child, it did not seem to thrive while at the hospital, and petitioner arranged with Mary Ernest, a sister of the deceased wife, to take the child and care for it. She received the child on the 10th of April, 1900, and petitioner employed a lady to assist her in her household duties in order that she might care for the child. Petitioner lived about forty miles from Mary Ernest and Mary Ernest lived within five or six miles of respondent. Mary Ernest kept the child but two or three weeks when she visited the home of respondent with it, and respondent and his wife insisted upon keeping the child, and Mary Ernest left it with them without any knowledge or arrangement between her and petitioner that it should be done. The first knowledge that petitioner had that the child was at the home of respondent was while on his way to visit it on the 23d of April, 1900, when he was so informed, and went to the home of respondent and visited the child. The child, Kimball, has remained with the respondent thence hitherto. Notwithstanding the fact that petitioner has at no time received a salary of more than $750, he purchased and owns unimproved city lots in Chicago for which he paid $3000; has saved and loaned out at interest over $3500; has accumulated a library of the value of $2000, and is possessed of horses and buggies and ample household effects. In these accumulations of property and money petitioner was aided to the extent of about $500 by his wife. Petitioner was remarried in September, 1902. His present wife is now twenty-nine years of age, was reared on a farm, has good health, was educated in the district schools and the Northwestern University, has taught school, is without children, and, as far as the evidence discloses, is a woman of estimable character, economical and industrious, and has at all times been willing to receive and care for Kimball. After the death of his wife and up to the time of his re-marriage the petitioner kept up his household, his family consisting of himself and a young lady who had lived with the family prior to the

death of his wife, and his son Joseph, whose care and custody he kept all the time. Respondent and his wife are past seventy years of age, have reared a family of seven children, the youngest of which is about thirty years of age and is the only one remaining at home. Respondent and his wife are both members of the same denomination of which petitioner is a minister. Respondent is possessed of about seven hundred acres of valuable farm land, free from encumbrance, and also possessed of a large amount of personal and other property.

So far as the social and moral fitness of either of these parties is concerned, for the care of the child, there would seem to be no question, and the record sufficiently shows that all concerned are attached to this child, and if the record were open to our consideration and we felt free to act upon the facts, we would have no hesitancy in holding that this father is entitled to the custody of his child. As before said, we feel constrained to hold that the proceedings and order of the circuit court in relation to the custody of this child are well pleaded as a bar to this proceeding. At the time the petition was filed the court was in some doubt upon the question, and therefore allowed the case to proceed to the taking of the evidence. It is now with some reluctance that we declare our conclusion that we are unable to consider the case upon its merits. We regard the rights of the parent as superior to those of any other person, when that parent is a fit person to have the custody of children and is so circumstanced that he can provide the necessaries of life and administer to the requirements of such a charge. The mere fact that some other person may have more money or property in any form is not one that appeals to us. The divine injunction to multiply and replenish the species was not confined to the rich, nor was it intended that the poor should beget the children and the rich should rear them. To recognize such doctrine would be little less than monstrous, and would be in utter disregard of those natural instincts of love and care and interest found in the breast of the parent. And while it is said in the books that the interests of the child is

the controlling question, it is not meant thereby to say that the financial interests, only, of the child shall predominate. The courts cannot be unmindful of the great fact standing prominently in all our biographies and histories, that the greater number of the men and women of real worth in our nation and throughout the world have come up through circumstances that required a struggle upon the part of their parents and themselves to make themselves what they were. While the financial interests of the child are not to be disregarded, they are, likewise, not to be controlling. Neither the day laborer nor the minister of the gospel is to be discriminated against in the consideration of this one of the highest natural rights with which man is endowed, merely because of the wealth of those who are contending against him. Until it becomes contrary to law that people in poor or moderate circumstances shall produce children, the courts must recognize and enforce the sacred rights and the legal rights they have to their custody, control and society.

In the consideration of all rights, however, the unbroken custom of ages, the good of society and the very necessities of the case require that the courts shall observe the rules of established law. If the question here presented were one between the individual seeking his liberty from alleged unlawful restraint and the people or the State insisting upon such restraint, then, by an unbroken line of decisions in this State, we would be free and bound to hold that an order in one proceeding before either a court or a judge thereof is not a final order from which an appeal or writ of error would lie and could not be pleaded as a bar to another or further proceeding. (*Hammond* v. *People,* 32 Ill. 446; *Ex parte Thompson,* 93 id. 89; 9 Ency. of Pl. & Pr. 1070.) But in contentions arising over the custody of a child, between the parents or other parties asserting rights thereto, the proceeding is held to be but a private suit in which the public is not concerned, and upon this question the authorities are so uniform that it can hardly be said that the question is open. It is not regarded in the light of the infant contending for

his own liberty, but in the true light of other persons interested, or claiming to be, contending for the custody of the infant, and until the infant arrives at the age of discretion his wishes are neither considered nor consulted. Adopting this view of the nature of the proceeding, the courts, and text writers as well, have uniformly taken the view that in such proceeding the order of the court or judge having competent jurisdiction is a final order, and is binding upon the parties under the same facts and so long as the same conditions exist as did at the time of the hearing and order. 2 Spelling on Extraordinary Relief, sec. 1198; Church on Habeas Corpus, (2d ed.) sec. 387; 9 Ency. of Pl. & Pr. 1071; 15 Am. & Eng. Ency. of Law, (2d ed.) 213; Tyler on Infancy and Coverture, 291; Freeman on Judgments, (3d ed.) sec. 324; *Mercien* v. *People,* 25 Wend. 64; *State* v. *Bechdel,* 37 Minn. 360; 5 Am. St. Rep. 854; *DuBois* v. *Johnson,* 96 Ind. 6; *Brook* v. *Logan,* 112 id. 183; 2 Am. St. Rep. 177; *In re Hamilton,* 66 Kan. 754; *Wier* v. *Marley,* 99 Mo. 484; 6 L. R. A. 672; *In re Sneden,* 105 Mich. 61.

Mr. Spelling, in his work on Extraordinary Relief, after stating in section 1197 the general rule that "in the absence of statutory provisions on the subject the refusal to discharge one restrained of his liberty does not bar issuance of a second writ by another court or officer," notes the exception here adverted to, in the following language: "But to the rule that in the absence of statutory provisions a party in confinement or custody is at liberty to make subsequent applications at will, there is an exception in the case respecting the custody of children, and the determination of the court upon the first application is conclusive in these cases. An application for the writ will be denied in the absence of new and subsequent facts being presented by which the state of the case or the relative claims of the parents to the custody of the child are altered in some material respect. Where, however, new and important facts can be presented there is no estoppel upon a second or an indefinite number of applications, even in the cases of children." (Sec. 1198.)

The language used by the author just quoted is practically the same in all the authorities cited and examined by us, and to further quote from them would but extend this opinion without aiding it in explicitness of statement or clearness in the announcement of the rule. Against this array of authorities, to which others might be added, we are not cited to nor have we found any authority, save one, either in the text books or a well considered case, where the rule is stated adversely to what is above announced, and we may properly conclude, from the earnestness and care with which this case has been presented and with the undoubted knowledge on the part of counsel for petitioner that the rule is as we have stated it, that if there had been authorities at variance with those cited, or noting an exception to the rule, they would have been called to our attention.

Our attention is directed to *In re King,* 66 Kan. 695, which was an original proceeding in the Supreme Court of Kansas. In that case the mother had applied for a writ in the probate court of Saline county, in that State, to obtain the custody of her children from their grandmother, and on a hearing the children were remanded to the custody of the grandmother. Afterwards the mother applied for another writ. The prior proceedings were pleaded, to which a demurrer was interposed, overruled, and the proceedings dismissed. Later the mother applied to the Supreme Court, and upon the subject of *res judicata* the court said : "Regardless of the analogy to the ordinary *habeas corpus* proceeding, however, we hold that the doctrine of estoppel does not preclude a court, in any case where it has acquired jurisdiction, from making such order with regard to the custody of a child as shall be for the child's best interest. * * * It is true that in the cases where the doctrine of *res judicata* is applied in its widest scope the welfare of the child is given great, and even controlling, effect, this consideration being treated as qualifying the legal rights of the claimants. * * * Yet in other cases it is said that the custody of a child will be awarded as its own welfare may require, because the interest of the child

will override the legal right and authorize an order in spite of such right. Whether the welfare of the child is properly spoken of as modifying the legal right or as justifying an order in opposition to the right may not be important. *But the distinction between a question as to the comparative rights of two conflicting claimants and one as to what is for the best interest of a child is real and vital. The former may be controlled by a prior adjudication, but the latter is always open."*

So much of the above quotation as is italicized must be regarded as the basis upon which that court felt authorized to make a distinction between the rights of those claiming the custody of the child and the interests of the child itself, and to found upon that distinction jurisdiction in that court to reconsider the case upon its merits although it had twice before been considered by other courts. We cannot give our assent to the distinction as a jurisdictional question. We recognize the distinction made, and understand it to be the duty of any court, in considering the question of the disposition of the custody of a child, to keep that distinction before it. The parent has the superior right to the child, but the superior right of the parent must yield to the best interest of the child. There is a recognition of both the rights, although the parent has the superior right, which is a true statement of an abstract proposition. He only has that superior right when it accords with the best interest of the child. All things being equal, as between the parent and strangers or other persons bearing a different relation to the child, the parent's right is superior; but we can readily imagine a parent who may be possessed of great wealth and surrounded by all the luxuries that money can acquire, or of artistic tastes to which he has given full reign, and yet there may be in his social life such glaring defects and such disregard of morals as would compel the court, in the discharge of its high duty to the infant, to place it in the hands of one in moderate circumstances, whose social and moral record was such as fitted him for such charge and whose influence and attentions would be calculated to be more beneficial to the welfare of

the child. As we have said, these considerations are presented to the court in every instance where the custody of children is involved, and we must presume that the court to whom previous applications have been made did not overlook them.

When the court in *In re King, supra,* said that upon the question as to the custody of a child the claimants might be estopped by a previous adjudication but that the question as to the best interests of the child was always open, if it meant by that declaration that such question could be raised at any time by either of the claimants who had previously litigated it before a court of competent jurisdiction upon the same state of facts, we are unwilling to follow that court and adopt that rule. Infants are the wards of the State and of the courts of the State, and it may be that although some court had disposed of an infant upon the contentions of parties then before it, upon a sufficient showing someone not a party to that proceeding might, in the interest of the child, invoke the action of the court and the court might entertain the question; but to do so could only be justified in extreme cases, where it was apparent that either the court who originally passed upon the case had been imposed upon by the collusion of parties, or by perjury, or some other extraordinary matter that would warrant the court in declaring an exception to the rule.

The rule announced in *In re King* by the Supreme Court of Kansas seems not to be the uniform rule of that court. *In re Hamilton,* 66 Kan. 754, (71 Pac. Rep. 817,) which is contained in the same volume of reports and was rendered a month prior to the *King case,* seems not to be in accord with the latter case. An original writ was sued out of the Supreme Court by the father against the mother and father of the insane wife of the petitioner, for the custody of the petitioner's child. A former application had been made to the district court, and the child, upon a full hearing in that court, had been remanded to the custody of the grandparents. The petition in the Supreme Court was denied and the rule

stated thus: "After a careful examination of the authorities we are inclined to the opinion, in cases of this character, where the controversy arises over the custody of a child, that the real issue is one between private parties contesting a question of private right under the form of *habeas corpus* proceedings, in which there arises no question of personal liberty, and, in consequence, all matters in issue arising upon the same state of facts determined in the prior proceedings should be regarded as settled and conclusive." And in support of the rule thus announced appear many of the authorities above cited by us. Without more substantial reasons for a departure from the rule there announced by that court we cannot accept the departure made in the *King case* as the better rule or one that should be of general application.

The contention of the petitioner that the rule we have adopted is only applicable in those States where an appeal or writ of error will lie, is, we think, only half correct. As applied to all of the States where the rule of the common law obtains and the proceeding is in any inferior court of record, if the judgment be deemed final a writ of error will lie, (*Haines* v. *People,* 97 Ill. 161,) while the weight of authority is that the right of appeal is statutory, and only lies where expressly authorized.

The fact that *Wier* v. *Marley,* 99 Mo. 484, was considered upon its merits after the announcement of the rule that we have adopted does not strengthen petitioner's contention, as the opinion states that the consideration of the rights of the parties upon the merits was at the special request of both parties, and the question mostly considered by the court in that case was as to the effect of a parol contract between the petitioner and respondents touching the custody of the child. There the father had been awarded the custody of his child by the district court and a new writ was sued out of the Supreme Court by the grandparents, who were respondents in the former proceeding, insisting upon a parol contract between the dying mother of the child and the grandparents, to which it was claimed the father had assented. That court,

211—34

holding that the parol contract was not binding, said: "And no well considered case will be found where the custody of a minor child was by *habeas corpus* taken from the father and given to another upon the sole ground that the legal rights of the father had passed to and vested in such other person by parol contract." The court evidently intended to make no change in the former order, and to comply with the request of both parties considered that legal proposition. And while in the *Mercien case, supra,* there seems to be some ground for argument that the rule of *res judicata* was applied because an appeal or writ of error might have been had, we do not think, upon a careful study of the case, that the rule rested upon that proposition. The return in the case at bar states that no change of conditions or new facts have arisen affecting the child since the former hearing, and the answer to the return admits, or at least does not deny, that allegation, so that the case is not brought within the exception to the rule as stated.

We have, perhaps, said more than is necessary to the proper disposal of this case, but as this is the first time the question has come before us and the case is fraught with some general interest, we have felt at liberty to give it a somewhat extended consideration.

The custody of the child, Kimball James Marshall Cormack, will be remanded to the respondent.

*Writ denied.*

WILKIN, CARTWRIGHT and SCOTT, JJ., dissenting:

We dissent from the foregoing opinion so far as it holds that a writ of error will lie to review a decision of a judge or court in a *habeas corpus* proceeding and that such a decision is *res judicata.* A *habeas corpus* proceeding may be before a judge in vacation, in which case there is no record to be certified to an Appellate Court for review. An order as to the custody of a child in a *habeas corpus* proceeding is in its nature temporary and interlocutory, and we do not see how it can be *res judicata* in a subsequent proceeding in this court