## John A. Wohlford, Plaintiff in Error, v. Jacob Burckhardt et al., Defendants in Error.

### Gen. No. 4,888.

PARENT AND CHILD—*rule with respect to right to custody.* The mere fact that other relatives or persons might give better care, and spend more time and money upon the child, is no reason for depriving the father of its custody. It is not a question of relative ability, but the sole question is, is the father able and will he give the child good care and treatment, and the court is only warranted in depriving a father of the custody of his child when the evidence discloses that the child, on his account, is destitute, abandoned or dependent, or that he is living an immoral life or in vicious or disreputable surroundings, or that he neglects or treats the child unkindly or cruelly, or may do this, or is wanting in good principles, or is illy adapted to the care of the child on account of defects in his mental or physical qualities, which prevent him from being a kind and affectionate father.

Petition for habeas corpus. Error to the Circuit Court of Stephenson county; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed April 14, 1908.

R. K. WELSH, for plaintiff in error.

DOUGLAS PATTISON, for defendant in error.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

At the March term, 1907, of the Circuit Court of Stephenson county, a writ of *habeas corpus* was issued upon the petition of John A. Wohlford, plaintiff in error, for the custody of his infant child, Hazel Wohlford. The petition alleged that plaintiff in error was the father of the child and that she was restrained of her liberty by Jacob Burckhardt and Bertha Burckhardt, her maternal grandparents, defendants in error. Plaintiff in error was therein designated as the petitioner and defendants in error as respondents, but will hereinafter be called plaintiff and defendants. In the

return to the writ the defendants admitted the child had been in their custody since about October 22, 1903, and averred they were the grandparents of said child, and that on or about October 22, 1903, plaintiff turned over said infant child to them under an agreement that they should care for and raise her; that the child weighed less than four pounds and was expected to die; that they had expended a great amount of care and attention upon her and provided her with the best of attention and a good home; that they were financially able to do so and would continue to do so if the child was left in their custody. The return further averred that the plaintiff had failed to provide for said child since its birth and had never shown any affection for her, and that they believed plaintiff would not provide a good home for her and that he had not the means to give her the care and attention her tender years needed, and that the best interests of the child demanded that she continue to reside with defendants until she became older and more mature. Plaintiff's traverse denied that he turned the child over to defendants under an agreement that they should care for and raise her, and averred that defendants came to him and said they wanted the child and that they would care for her and he could take her home any time, and denied that he had failed to provide for said child, and denied defendants' averment that he had never shown her affection and that he would not provide a good home for her and that he had no means to give her the care and attention needed, and denied that it would be for the best interests of the child to reside with defendants until she became older.

Evidence was heard upon the issues made by the traverse to the return, and an order was made denying the prayer of the petition and remanding the child to the custody of defendants, and judgment was entered on such order and that plaintiff pay the costs.

To review such judgment this writ of error was sued out.

The evidence shows that plaintiff was married to Clara Burckhardt, daughter of defendants, February 10, 1903. Hazel, the child in controversy, was born September 26, 1903, and the mother died October 15, 1903. After her death plaintiff's mother had the custody of the child for a time, during which period there was some discussion as to where she should be placed, and she was finally taken by defendants about October 22, 1903. In February, 1904, plaintiff went to Minnesota and remained there until December, 1906. Prior to going to Minnesota plaintiff visited the child frequently, and while in Minnesota wrote defendants a number of times inquiring about her. After his return, he visited the home of defendants every other Sunday up to a short period prior to the commencement of the proceedings, he insists, for the purpose of seeing his child; defendants claiming, however, that his visits were more on account of a sister of his deceased wife than the child. Whatever the motive for his visits, an estrangement grew between plaintiff and defendants' family, and plaintiff demanded the custody of his infant daughter of defendant, Jacob Burckhardt. Burckhardt replied, "If you take her you got to pay me." To which plaintiff answered: "If you will tell me what you want and you are reasonable, I will pay you." Burckhardt then said, "That is not it. The law will have to make the costs and I will charge you every cent the law allows me and I will see the doctors too?" Plaintiff subsequently renewed the demand and was again refused the custody of the child, following which he instituted this proceeding.

The evidence also shows that plaintiff lives with his father and mother, and helps his father carry on his farm, for which he receives about the equivalent of $40 per month, and that he owns 120 acres of land in Minnesota worth about $40 per acre, which is mortgaged for $1,400, bearing interest at 5 per cent. per annum.

Plaintiff's family consists of his father, sixty-six years of age, and his mother, sixty-three years of age. He is thirty-three. Defendants are aged respectively sixty-one and fifty-three years and their family consists of two daughters, women grown, and two sons, one twenty-two and the other twenty years old. Defendant, Jacob Burckhardt, has 208 acres of land, encumbered for $2,000, a lot in town and one-half section of land in Minnesota. Both families are Germans and reside in a German community. The Burckhardts keep beer and wine in the house, and the male members, like plaintiff, occasionally frequent saloons. Some effort was made to show that plaintiff's habits were such as to render him an unfit person to have the custody of his infant child.

Plaintiff's father, mother, sister and three apparently disinterested witnesses testified that plaintiff's habits were good, and that he was industrious and, in their opinion, a suitable person to have the custody and education of an infant child. Furthermore, while some of the witnesses for defendants testified that plaintiff sometimes frequented saloons and drank beer and occasionally played cards, none of them testified that in their opinion he was an unfit person to have the care of his infant child. It is apparent to us that plaintiff and his family and the defendants are equally fitted and financially able to have the care and custody of the infant in question, and that she would have as good a home with her father and his parents as she has with the defendants.

Section 4, chapter 64, of Hurd's R. S. 1905, provides that "the parents of a minor, if living, and in case of the death of either of the parents, the surviving parent, they being respectively competent to transact their own business, and fit persons, shall be entitled to the custody of the person of the minor and the direction of his education."

In the case of Cormack v. Marshall, 211 Ill. 523, the Supreme Court says: "We regard the rights of the

parent as superior to those of any other person, when that parent is a fit person to have the custody of children and is so circumstanced that he can provide the necessaries of life and administer the requirements of such a charge.'' This rule is in accordance with a long line of decisions, and there can be no longer any doubt as to the law governing this class of cases.

Unless the evidence is clear that the parent of the child is unfit to care for it, the father should have the custody. The mere fact that other relatives or persons might give better care, and spend more time and money upon the child, is no reason for depriving the father of its custody. It is not a question of relative ability of the parents, but is the sole question of whether the father is able and will give the child good care and treatment. The court is only warranted in depriving the father of the custody of the child when the evidence discloses that the child, on his account, is destitute, abandoned or dependent, or that he is living an immoral life or in vicious or disreputable surroundings, or that he neglects or treats the child unkindly or cruelly, or may do˝ this, or is wanting in good principles, or is illy adapted to the care of the child on account of defects in his mental or physical qualities, which prevent him from being a kind and affectionate father. The evidence in this case fails to establish any of these causes. No definite rule has been laid down as to what constitutes fitness in law that a parent must have to have the control of his child.

After a thorough examination of authorities, we think that unfitness is not to be found merely because the father may be in straitened circumstances, or may not be as discreet or judicious as could be wished, nor because other persons of greater means or better social standing are ready and willing to take the child and give it greater advantages. If such were the test, the father's right would be reduced to a mere shadow, of the most unsubstantial character. But it must appear that the father had so conducted himself, or

shown himself to be a person of such description, or is placed in such a position, as to render it not merely better for the children, but essential to their safety or to their welfare, in some very serious and important respect, before his rights should be treated as lost or suspended, or should be superseded or interfered with.

Although it may be a hardship to deprive the defendants of the custody of the child after they have cared for it so long and so tenderly, yet it is our duty to follow the law, and there not being sufficient evidence in the record to show that the father should be deprived of the custody of the child, we therefore reverse the judgment and remand the cause.

*Reversed and remanded.*