Anthony Kulan, Appellant, v. Florence Anderson, Appellee.

Gen. No. 40,137.

Opinion filed May 2, 1939.

CLARENCE F. MARTIN, of Chicago, for appellant.

HARRY L. BRIN and ALBERT E. HALLETT, Jr., both of Chicago, for appellee; ALBERT E. HALLETT, JR., of counsel.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

Anthony Kulan, petitioner (appellant), filed a verified petition for a writ of habeas corpus, in which he alleged that his daughter, Phyllis Emilie Kulan, one month old, was restrained of her liberty by Florence Anderson "for the purpose of retaining custody of said child and having the care, maintenance and education of said child, and for the purpose of depriving your petitioner of the custody, care and maintenance of said child. That your petitioner has demanded of said Florence Anderson the possession of said child, but to no avail." After the writ issued Florence Anderson, respondent (appellee), filed an unverified answer, signed by her attorney, which denies that the child was restrained of her liberty, and answers that the mother of the child, the sister of respondent, was dead; that the mother asked that ―――― Tingey (Mrs. Alice Tingey, the maternal grandmother of the child) take care of and raise the child; that ―――― Tingey is a nurse and has had considerable experience in the raising of children; that petitioner has no place or home for the child and is unable and unfit to take care of and raise the child, and that it will be to the best interests of the child to have it remain with "respondents, especially the respondent ―――― Tingey." Although the writ made Florence Anderson the sole respondent, the answer filed attempts to make Mrs. Alice Tingey a respondent. The cause was tried by the court without a jury and at the conclusion of the hearing an order was entered finding that "the petitioner

herein, Anthony Kulan, is a fit person to have the custody of said minor, Phyllis Emilie Kulan. It Is Therefore Ordered that the custody of Phyllis Emilie Kulan be and the same is hereby given to the petitioner, Anthony Kulan, her father. *It Is Further Ordered that Florence Anderson, respondent herein, have the custody of the said Phyllis Emilie Kulan from 10:00 o'clock on Saturday morning until 7:00 o'clock Sunday evening on alternate weekends beginning November 13th, 1937, and continuing until further order of the Court,* providing said Florence Anderson shall call for the said Phyllis Emilie Kulan at her place of residence and return said child to said place of residence at the end of the period of custody herein provided for Florence Anderson.'' (Italics ours.) Petitioner appeals from that part of the order that we have italicized.

Petitioner contends that a surviving parent has the natural right to have the custody of his child; that as against him, respondent, an aunt of the child, has no natural right to the custody of the child; that as the father of the child he has the right to her custody as against the world because he has not forfeited in any way his natural right, and it has been adjudged that he is ''a fit person to have the custody of said minor.'' Petitioner concedes that if (a) he were an unfit person, or (b) his home were unfit, or (c) he had relinquished his right to the custody of the minor to another, or (d) he had abandoned the child, his natural right to the possession of the child would be forfeited.

Respondent, upon the oral argument, conceded that petitioner was a fit and proper person to have the custody of his child and that he had not in any way forfeited his right to said custody; that the part of the order that finds that petitioner ''is a fit person to have the custody of said minor, Phyllis Emilie Kulan,'' and ''that the custody of Phyllis Emilie Kulan be and the

same is hereby given to the petitioner, Anthony Kulan, her father,'' was proper; but she contends that under the rule that the best interests of the child should control, the trial judge did not act arbitrarily nor against the legal rights of petitioner in awarding the custody of the child to respondent for a limited period of time on alternate week-ends.

Section 4, ch. 64, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 57.047], reads as follows: ''The guardian of a minor shall have, under the direction of the court, the custody, nurture and tuition of his ward, and the care and management of his estate; but the parents of the minor, if living, and in case of the death of either of the parents, the surviving parent, they being respectively competent to transact their own business, and fit persons, shall be entitled to the custody of the person of the minor and the direction of his education. The parents of a minor shall have equal powers, rights and duties concerning the minor. In case the father and mother live apart, the court may, for good reason, award the custody and education of the minor to either parent or to some other person. Whenever any person or persons make a settlement upon or provision for the support or education of any minor child, it shall be competent for the court, in case either the father or the mother of such child be dead, to make such order in relation to the visitation of such minor child by the person or persons so making such settlement or provision as shall to the court seem meet and proper.''

*Stafford v. Stafford,* 299 Ill. 438, involved a controversy between the father of a child and his wife's sister as to the custody of the child, and the charge was made that the father was a habitual drunkard, but the Supreme Court, after holding that the evidence did not support the charge, said (pp. 448, 449): ''Under the evidence in the record defendant in error is entitled to the custody, care, control and education of his son as

against plaintiff in error. He is its father and has the natural right to have such custody. As against him the plaintiff in error has no right whatever, under the law, to the custody of the child, no more than an absolute stranger, unless it can be shown that he has in some way forfeited his right. . . . As father of the child he has the right to its custody as against the world, because there is no showing that he has forfeited such natural right. *Sullivan v. People,* 224 Ill. 468; *Cormack v. Marshall,* 211 id. 519; *People v. Turner,* 55 id. 280; 21 Cyc. 34.'' The court further held that the aunt had no natural right to the custody of the child or to visit it.

*People ex rel. Good v. Hoxie,* 175 Ill. App. 563, involved a controversy over the custody of a child between the father of the child and the maternal grandmother. The parents of the child were divorced upon complaint of the mother, but the divorce decree recognized the fitness of the father to have the custody of the child by decreeing that he should have it part of the time. After the divorce the mother died and Mary J. Hoxie, the maternal grandmother, without the knowledge or consent of the father, procured letters of guardianship of the person of the child to be issued to her from the probate court of Cook county in the estate of the mother. Shortly thereafter the father instituted the habeas corpus proceedings and after a hearing the trial court awarded the custody of the child to the father. One of the contentions of Mrs. Hoxie was that as guardian of the person and estate of the child she was the successor and representative of the mother of the child and as such was entitled to her custody and tuition. The trial court found against this contention and the Appellate Court sustained the trial court in that regard. In its opinion the Appellate Court states (pp. 566, 567): ''There is no finding by any court, disclosed by this record, that defendant in error is not

competent to transact his own business, or is not a fit person to have the custody of his child and to direct her education. Nor was there any evidence offered, so far as this record shows, in either the divorce case, the guardianship matter, or this habeas corpus proceeding, upon which such a finding could be predicated. In the divorce proceeding the court recognized the fitness of the father to have the custody of the child by decreeing that he should have it part of the time. In the guardianship proceeding the father was not in court, neither was he served with process or notice of the pendency of the petition, and the court was, therefore, powerless in that proceeding to try the question of his fitness or want of fitness to have her custody. In this habeas corpus proceeding, while the petition of defendant in error and the return of plaintiff in error were full enough to permit of proof of the want of fitness of defendant in error to have the custody of Kathryn, no such proof was offered, and the court expressly found that defendant in error was competent to transact his own business, and was a fit person to have such custody. The burden of proving unfitness was on plaintiff in error, and the rule is that, unless such unfitness is established by clear evidence, fitness will be presumed and the custody of the child will be awarded to the parent. *Cormack v. Marshall,* 211 Ill. 519–523; *Wohlford v. Burckhardt,* 141 Ill. App. 321; *In re Thomsen,* 1 Neb. (Unoff.) 751; *State v. Martin,* 95 Minn. 121; *Giffin v. Gascoigne,* 60 N. J. Eq. 256. The finding of the court was undoubtedly right on the record in this case.'' The Appellate Court sustained the judgment of the trial court and the Supreme Court denied a certiorari (see 176 Ill. App. xxvii). Mrs. Hoxie was a woman of great wealth, the father was dependent upon a moderate salary, and it was contended by Mrs. Hoxie that if she were given the custody of the child the latter would have great advantages and

would ultimately become her heir, and it was strenuously argued, by able counsel, that the interests of the child would be best served by awarding her custody to Mrs. Hoxie.

*Harmon v. Starbody,* 219 Ill. App. 603, involved a controversy between the father of a child and his sister over the custody of the child. The Appellate Court, after holding that the father was a fit person to have the custody of his children, said (p. 605): "That a parent has the right to the custody of his children against all the world, unless he has forfeited that right or the welfare of the child demands that he should be deprived of it, is a fundamental principle which has been long and firmly established. The home is the foundation of society and civilization and only in an extreme and special case where the parent is unfit or unable to give the proper care to his children will the court take them from him. *Sullivan v. People,* 224 Ill. 468; *Hohenadel v. Steele,* 237 Ill. 229; *Cormack v. Marshall,* 211 Ill. 519; section 4, ch. 64, Rev. St. (J. & A. Par. 6001); 21 Cyc. 63; *Stafford v. Stafford,* 217 Ill. App. 548."

*Wohlford v. Burckhardt,* 141 Ill. App. 321, involved a controversy between the father and the maternal grandparents of an infant child, over its custody, the child at the time of the trial being in the custody of the grandparents. The Appellate Court, after holding that the father was a fit and proper person to have the custody of the child, said (pp. 324–326): "In the case of *Cormack v. Marshall,* 211 Ill. 523, the Supreme Court says: 'We regard the rights of the parent as superior to those of any other person, when that parent is a fit person to have the custody of children and is so circumstanced that he can provide the necessaries of life and administer the requirements of such a charge.' This rule is in accordance with a long line of decisions, and there can be no longer any doubt as to the law gov-

erning this class of cases. Unless the evidence is clear that the parent of the child is unfit to care for it, the father should have the custody. The mere fact that other relatives or persons might give better care, and spend more time and money upon the child, is no reason for depriving the father of its custody. It is not a question of relative ability of the parents, but is the sole question of whether the father is able and will give the child good care and treatment. The court is only warranted in depriving the father of the custody of the child when the evidence discloses that the child, on his account, is destitute, abandoned or dependent, or that he is living an immoral life or in vicious or disreputable surroundings, or that he neglects or treats the child unkindly or cruelly, or may do this, or is wanting in good principles, or is illy adapted to the care of the child on account of defects in his mental or physical qualities, which prevent him from being a kind and affectionate father. The evidence in this case fails to establish any of these causes. No definite rule has been laid down as to what constitutes fitness in law that a parent must have to have the control of his child. After a thorough examination of authorities, we think that unfitness is not to be found merely because the father may be in straitened circumstances, or may not be as discreet or judicious as could be wished, nor because other persons of greater means or better social standing are ready and willing to take the child and give it greater advantages. If such were the test, the father's right would be reduced to a mere shadow, of the most unsubstantial character. But it must appear that the father had so conducted himself, or shown himself to be a person of such description, or is placed in such a position, as to render it not merely better for the children, but essential to their safety or to their welfare, in some very serious and important respect, before his rights should be treated as lost or suspended,

or should be superseded or interfered with. Although it may be a hardship to deprive the defendants of the custody of the child after they have cared for it so long and so tenderly, yet it is our duty to follow the law, and there not being sufficient evidence in the record to show that the father should be deprived of the custody of the child, we therefore reverse the judgment and remand the cause.''

The cases cited by respondent in support of the trial court's action are distinguishable from the instant one under the facts. In *People v. Weeks,* 228 Ill. App. 262, an aunt, at the father's request, had had the child's (Kathryn's) custody from her infancy and had supported, maintained and fully provided for her for nearly 10 years. The evidence also tended strongly to show that the father had relinquished to the aunt his right to Kathryn's custody, and that, at times, he neglected Kathryn during the years she lived with her aunt. He had remarried and had a daughter by the second wife. Kathryn loved her aunt, was very happy with her, and was not happy when, occasionally, she visited her father's home. Under all the facts and circumstances, the awarding of the custody of the child to the aunt by the trial court was approved by the Appellate Court. Mr. Justice O'Connor, however, dissented from the opinion of the majority in that case. In *People v. Porter,* 23 Ill. App. 196, the father, after the death of his wife, placed the child, two years old, in charge of the Porters to be cared for and nurtured. He was an invalid and unable to perform manual labor, and about six years after the child was placed with the Porters the father removed to Kansas, where he became so afflicted with inflammatory rheumatism that he was unable to earn a living and was so reduced in circumstances that he could not pay anything for the support of his daughter. He then made an arrangement with the Porters by which they agreed to take

care of and support the child until she was grown up and would make no charge to the father for her support, and the father agreed to leave her with them and to say nothing more about taking her away. The Porters were very worthy people, had taken excellent care of the little girl, had great affection for her and were unwilling to part with her, and ''the affections of the little girl are attached to them by bonds equally strong.'' The father had remarried and at the time of the trial had been separated from the daughter for years. The decision in that case may be justified upon the theory that the father had voluntarily relinquished the custody of the child. *People v. Small,* 142 Ill. App. 422, was a habeas corpus proceeding that involved a controversy over the custody of the child between the maternal grandparents and the father of the child. The mother of the child sued the father for divorce on the charge of extreme and repeated cruelty. The suit was contested and a jury returned a verdict in favor of complainant, and a decree was entered that granted her a divorce and alimony and awarded her the custody of the child for ten months of the year, the father to have the child for two months of the year. Thereafter the mother petitioned the court to give her the sole control of the child and the father asked that he be given the custody of the child. Upon a hearing the sole custody of the child was given to the mother. The father became largely in arrears in the matter of alimony and professed to be unable to pay it, and the mother was compelled to work to support herself and the child. The mother died, leaving a last will, which was duly probated, by which she appointed her mother guardian of the child. At the time of the hearing of the habeas corpus case the father lived on North Clark street, and his housekeeper, a young widow, had one child. The widow conducted a facial massage parlor for ladies in one of the rooms of the father's home.

The opinion of the Appellate Court states, at some length, the situation surrounding the father's home, and it is clear that the Appellate Court, in its approval of the decision of the trial court, returning the custody of the child to "the grandmother and testamentary guardian," was of the opinion that the father's home, considering its surroundings, was not a fit home for the child. If the child, in the father's home, would be subjected to bad influences, that was a circumstance that would have a material bearing on the question as to whether or not he was a fit person to have the custody of the child.

It must be borne in mind that the controversy in the instant case is between the father and an aunt, and that the right of the State to take a child from the parent, or parents, under certain circumstances is not here involved.

In our opinion, the father, under the law of this State and the admitted facts, had the right to the sole custody of the child, and the action of the trial court in ordering that the aunt have the custody of the child for a certain period of time on alternate week-ends was a material abridgment of that right. The rule that a parent has the right to the custody of his child against all the world, unless he has forfeited that right, was born of the natural desire of mankind to create and maintain a home; and, as has been often said, the home is the foundation of society and civilization. Deprive worthy parents of their natural right to the custody of their children, where they have not forfeited that right, and you undermine the home.

That part of the order of the superior court of Cook county wherein it is ordered "that Florence Anderson, respondent herein, have the custody of the said Phyllis Emilie Kulan from 10:00 o'clock on Saturday morning until 7:00 o'clock Sunday evening on alternate week-ends beginning November 13th, 1937, and continuing

until further order of the Court, providing said Florence Anderson shall call for the said Phyllis Emilie Kulan at her place of residence and return said child to said place of residence at the end of the period of custody herein provided for Florence Anderson,'' is reversed.

*That part of order appealed from reversed.*
JOHN J. SULLIVAN and FRIEND, JJ., concur.