**People ex rel. Barney Yarmulnick, Appellee, v. Vera Hoff, Appellant.**

**Gen. No. 42,749.**

536

Opinion filed June 30, 1944. Rehearing denied September 14, 1944.

BERNARD M. FELDMAN and GEORGE A. GORDON, of Chicago, for appellant; GEORGE A. GORDON, of Chicago, of counsel.

OSCAR M. NUDELMAN, of Chicago, for appellee.

MR. JUSTICE LUPE delivered the opinion of the court.

Petitioner, Barney Yarmulnick, filed his petition for a writ of habeas corpus against respondent Vera Hoff, a sister of his deceased wife, to obtain custody of his daughter Lena. Respondent filed her return and asked that the writ be quashed and the petition dismissed. The cause was tried by the court without a jury, and an order was entered awarding the custody of Lena to the petitioner, from which order the appeal is taken.

Respondent contends that petitioner's right to custody of his child is not absolute; that the best interest and welfare of the child, considering all the cir-

cumstances, demand that her custody remain with respondent; and that the judgment of the trial court is contrary to the evidence.

Petitioner urges the court was correct in its ruling; that he as her father is entitled to and has the natural right to the custody of his child, and is a fit and proper person to be entrusted therewith.

It is alleged in respondent's return that she had taken care of the child since its birth, as one of her own children; that neither petitioner nor his present wife are fit persons to have the care and custody of the child; nor is it for the best interest of the child that custody be turned over to them; that the sole motivating cause of petitioner's desire to secure the custody of his child is to avail himself of a deferment claim under the Selective Service Act.

As the custody of a child is involved, it becomes necessary to resort to the evidence to ascertain what should be done for her best interest.

Lena was born February 4, 1933 and at the time of her birth her mother died. After the birth of Lena, petitioner with his child rented an apartment with his mother-in-law, sister-in-law (Mrs. Trevis) and her husband, at 1509 Ridgway avenue, Chicago, where they resided for a period of about two and a half years when, because of some disagreement, the petitioner moved, leaving the child with his in-laws, with the understanding that he was to contribute toward her support, furnish clothing, medical and other expenses, and when he had a home and was able to care for Lena she would be given to him. He went to live with his mother and father and two brothers. The evidence shows he contributed toward the support of his child. There is, however, some question as to the extent of payments made by him. In 1936 or 1937 Mrs. Hoff, who had always helped in taking care of the child up to that time, took the child in her home where the child remained to the time of the filing of these proceedings.

Petitioner testified he had had the same understanding with respondent as was previously had with Mrs. Trevis that if and when he was able to take the child she would be given to him, and he agreed with Mrs. Hoff to pay toward the support of the child and take care of her clothing, medical and other expenses. This he did, as is shown by the record and the exhibits introduced in evidence.

In 1937 or the early part of 1938 petitioner entered into his second marriage, which was short-lived, and about seven months thereafter a decree of divorce was entered. Up to the time of his second marriage he was unable to take the child because of lack of room in the home where he resided with his parents, and during the seven months of his second marriage he and his wife occupied one room and therefore he contends the accommodations for a child such as Lena were inadequate. After the divorce he returned to his parents and remained with them until he married his present wife on February 21, 1942. His present wife is a divorcee with one child and he now resides with her and the child at 1434 South Central Park avenue, Chicago, in a four-room steam-heated apartment. He is now and has been for the past two and a half years in the employ of Hart, Schaffner & Marx and his present salary averages about $35 to $40 per week.

During the entire time from the child's birth to the present time the record shows that petitioner had visited the child regularly, had taken her with him on week-ends, and on one occasion she was with him for the period of a week; he has paid toward the support of the child regularly excepting for a short space of time, and has contributed toward her other expenses, and the record shows he tried to comply to the best of his ability with his responsibilities as a father. Many pictures of petitioner and the child are in evidence which were taken at various times during the period since she was six months old to nine years of age,

demonstrating the affection that he had for her. Petitioner had taken out on his life a policy of insurance wherein he had made his daughter the sole beneficiary, thereby attempting to protect her future in the event of his death, and had performed other acts which tend to show his parental love for her.

The child visited with his present wife at their home. Before suing out the writ petitioner requested of respondent the custody of his child, informing her of his marriage, that he had a steady job and a nice home, and advised her that she could see the child at any time she wished, and that the child could be with her at times and that the door to his home was always open to her. She refused to turn the child over to him.

The evidence showed that respondent kept and maintained a fine home; that the child's training was good, and that respondent had always shown toward the child genuine motherly love; that the members of respondent's family were devoted to the child, and that she in turn was devoted to all of them; that she was a bright girl, well mannered, well kept, and that a love existed between her and respondent as that of mother and daughter.

Lena expressed her desire of remaining with respondent.

Petitioner's present wife testified that she loved Lena and that she desired her to live in their home. Other witnesses testified as to the good character of petitioner and his present wife.

Chapter 3, Article XI, section 284 of the Illinois Revised Statutes [Jones Ill. Stats. Ann. 110.381] provides:

"Parental right to custody.) When both parents of a minor are living and are competent to transact their own business and are fit persons, they are entitled to the custody of the person of the minor and the direction of his education; and, if one parent is dead and the surviving parent is competent to transact his

own business and is a fit person, he is similarly entitled. . . .''

In controversies of this character three matters are to be regarded: the rights of the parent, the right and interest of the person or persons to whom the care and custody of the infant child had been given by the parent, and the welfare of the child, and of these three the last-mentioned is the matter of primary and paramount importance. (*Sullivan v. People,* 224 Ill. 468.)

The law presumes the interest and welfare of the child to be best served in the custody of its father (*Wilson v. Mitchell,* 48 Colo. 454) and that the right of a parent to the custody of his child is superior to that of any other person when he is fit and can provide the necessities of life, and where both contestants are equally proper persons, such as in this case, the father will be awarded the preference. (*Carmack v. Marshall,* 211 Ill. 519.)

The court is only warranted in depriving a father of the custody of a child when the evidence discloses that the child on his account is destitute, abandoned or dependent; that he is living an immoral life or in vicious or disreputable circumstances; that he has neglected and treated his child unkindly or cruelly, or that he may so treat the child; that he is wanting in good principles, or that he is illy adapted to the care of the child on account of defects in his mental or physical qualities which prevent him from being a kind and affectionate father. (*Wohlford v. Burckhardt,* 141 Ill. App. 321.)

It is intimated that the home of respondent is a place where the child would receive better care and attention and that she was better able financially to provide for her welfare. It may be that the father's home is not as elaborate as her present home, or that he may not be able to provide her with all of the things she has been accustomed to have, but he should not be deprived of her custody if he is so circumstanced that he can pro-

vide the necessaries of life and the proper maintenance and education of his daughter. (*Sullivan v. People,* 224 Ill. 468.)

It is not a question of relative ability of a parent but the sole question is whether the father is able and will give the child good care and treatment. (*Carmack v. Marshall,* 211 Ill. 519.)

We have also considered with the evidence in this case the desire of the child to remain with respondent. However, we feel her interests will be best served in the home of her parent the petitioner.

The record fails to substantiate the intimation that the petitioner was addicted to intoxicating liquor, or the charges he is unfit to have the care, custody and control of his child, and that his present home is not a proper place for her. The burden of proving unfitness of petitioner was on respondent. This she failed to sustain. The law is that unless such unfitness is established by clear evidence fitness will be presumed, and the custody of the child will be awarded to the parent. (*People v. Hoxie,* 175 Ill. App. 563.)

Petitioner's wife is willing to share the responsibility with her husband in the future in raising and caring for Lena, and there is nothing in the record that would indicate that she would not be a fit and proper person, with her husband, to safeguard the future welfare of the child.

Respondent relies upon the cases of *People v. Weeks,* 228 Ill. App. 262, *People v. Porter,* 23 Ill. App. 196, *People v. Nelson,* 235 Ill. App. 410 and *Chapsky v. Wood,* 26 Kan. 650, to sustain her contention that the child should remain with her. We have examined each of these authorities and, in each, the father had relinquished or abandoned the right of custody of his child either by agreement (which in itself is not binding), or by his conduct, or neglect of duty to his child. On the facts in those cases we agree with the law as therein enunciated, but they do not apply to the case before us.

In the case of *Kulan v. Anderson*, 300 Ill. App. 267, a well-reasoned opinion in this class of cases, after reviewing the holdings in this and other States pertaining to the question of custody of children, the court said (p. 277): ·

"It must be borne in mind that the controversy in the instant case is between the father and an aunt, and that the right· of the State to take a child from the parent, or parents, under certain circumstances is not here involved. In our opinion, the father, under the law of this State and the admitted facts, had the right to the sole custody of the child. . . . The rule that a parent has the right to the custody of his child against all the world, unless he has forfeited that right, was born of the natural desire of mankind to create and maintain a home; and, as has been often said, the home is the foundation of society and civilization. Deprive worthy parents of their natural right to the custody of their children, where they have not forfeited that right, and you undermine the home."

Respondent next contends that there was want of good faith on behalf of petitioner in the filing of his application for the custody of the child and that it was done solely for the purpose of securing deferment under the Selective Service Act. With this we cannot agree. The ·Selective Service Act, section 622.31 [50 App. USCA § 305 (m)] provides in substance that any registrant who with his child or children maintained a bona fide relationship in their home prior to December 8, 1941 shall be deferred. Petitioner of course could not hope to be deferred on this theory, since the child was not living with him in his home on or prior to December 8, 1941.

This matter was heard by a trial judge of many years experience who saw and heard the witnesses and was better able than we to judge of the credibility of each. His findings will not be disturbed unless it can be said that they are clearly and palpably erroneous. (*Ehrich v. Brunshwiler*, 241 Ill. 592.)

We appreciate the feelings of Mrs. Hoff toward the child and realize the love she bears for her, and it may seem a hardship to deprive her of the custody of the child, but the legal right of a father and his love and affection for his own daughter should also be considered, and after weighing all of the evidence in this case we feel that the judgment entered herein was a just and correct one, and it is therefore affirmed.

*Judgment affirmed.*

BURKE, P. J., and KILEY, J., concur.