Thomas Paul Fontaine Giacopelli, a Minor; his Parents, as Next Friend and in his behalf, Nick Giacopelli and Helen Giacopelli, Petitioners-Appellants, v. The Florence Crittenton Home, a not for profit corporation et al. (John Doe and Mary Doe now known as Anthony J. Legaz and Doris B. Legaz), Respondents-Appellees.

### Gen. No. 11,129.

Second District, First Division.

February 25, 1958.

Opinion modified and rehearing denied March 26, 1958.

Released for publication March 26, 1958.

James D. Reynolds, of Peoria, for appellant.

James L. Garretson, of Chicago and Rudolph J. Westphal, of Peoria (Ruth Thornquist, of counsel) for appellees.

JUSTICE SPIVEY delivered the opinion of the court.

The plaintiffs, the mother and father of Thomas Paul Fontaine Giacopelli, filed a petition for a writ of habeas corpus in the Circuit Court of Peoria county to secure the body of Thomas Paul Fontaine Giacopelli. The petition alleged that the minor was illegally and unlawfully restrained by the respondents, Anthony J. and Doris B. Legaz. It was alleged in the petition for writ of habeas corpus that the minor was born on March 2, 1957, at Peoria, Illinois, while

the petitioner, Helen Giacopelli, was residing at the Florence Crittenton Home, also a respondent.

On March 6, 1957, the minor had been declared a dependent child in the County Court of Peoria county, and on March 9, 1957, the minor was placed in the home of the respondents Legaz. Petitioners moved the County Court of Peoria county to vacate its order declaring Thomas Paul a dependent child alleging that the dependency proceedings were invalid in that there the court had no jurisdiction of the father. On June 15, 1957, after a hearing, the County Court of Peoria county vacated the dependency decree and granted petitioners leave to file an amended proceeding within seven days. Thereafter, no amendment having been filed, the dependency suit was dismissed on petitioners' motion and they demanded the return of the child. Respondents refused to return the child to the mother and father, and the mother and father instituted this action on July 1, 1957 to secure the return of the child. An order was entered requiring the respondents Legaz to file their return to the petition. It was also found that the child was not then in the custody of the respondents, the Florence Crittenton Home, and as to the home, the writ was quashed.

A hearing was held on July 11, 1957, and at the conclusion of the hearing, the court found that the welfare of the child would best be served by quashing the writ and remanding the custody of the child to the defendants Legaz. An appeal is taken from this order. An order was then entered that the minor should be placed in the custody of the Florence Crittenton Home pending the proceedings herein.

Petitioner Helen Giacopelli was 43 years of age at the time Thomas Paul Fontaine Giacopelli was conceived. Mrs. Giacopelli was in the menopause and was emotionally disturbed by the pregnancy. She left the home of her husband in St. Louis and visited her mar-

ried daughter in Illinois. It was while she was in Illinois that she heard about the Florence Crittenton Home at Peoria, Illinois. She visited the home in the fall and represented to the home that she was unmarried and sought to have her child under circumstances which would not bring shame and distress to her married son and daughter whom she had reared and educated by working as a domestic laborer. It was said that she stated that she was too old to start raising a second family. Arrangements were made for Mrs. Giacopelli to return to the home near the time of the expected delivery, and she then returned to her husband's home in St. Louis.

The husband had no knowledge of this situation and supposed that his wife had been visiting at her daughter's during her absence. In January of 1957, she again left her husband with the announced intention of visiting her daughter in Illinois, but instead, went to the home in Peoria where the child was delivered on March 2, 1957, by means of Caesarian section.

On March 5, 1957, Mrs. Giacopelli signed a consent to a dependency order. Miss Claire Austin, superintendent of the home was named guardian of the child in the dependency proceeding, and the child was placed in the home of the respondents Legaz. The father had no notice of any of the proceedings, or for that matter, the birth of the child.

After a lengthy convalescence, the wife returned to her home and husband in St. Louis. He immediately inquired concerning the child and was advised in part by the wife as to what had happened. Eventually, the father found the child and requested his return. The father also took the necessary steps to have the dependency decree vacated for want of jurisdiction of the court, in that he, the natural father, was not a party and had no notice of the proceeding. The re-

spondents refused to return the child and the instant action was commenced.

Petitioners contend that Mrs. Giacopelli was unaware of the nature of her act in signing the consent to the dependency decree, in that she was under the influence of drugs and in an emotionally unstable condition. It was undisputed that she gave some misinformation to the home and that the husband had no part or knowledge in the circumstances which brought his wife to the home.

Petitioners contend that the order of the County Court of Peoria county is res judicata on the question of the fitness of the natural parents. With this we are unable to agree. Because of the tender concern for the welfare of children, a court is always justified in inquiring into the conditions surrounding the child.

Respondents contend that the natural parents were unfit and that the child's best interest would be served if the writ of habeas corpus were denied. We believe that the question to be determined is whether or not the natural parents were fit persons to be entrusted with the care of this little boy.

The mother before her marriage to Giacopelli raised a family by years of work and sacrifice. Her son graduated from college and her daughter is apparently living a happy normal life as a housewife and mother. This in itself is a tribute to this woman. She cannot be commended for her action with reference to the situation herein, but we are not prepared to say that her actions were not produced at least in part by her condition of health. The record shows that her condition has improved substantially and it is silent in any matter which would indicate that at this time the natural mother would be unable by reason of health to properly care for her child. At this time, she obviously has the desire to so do.

449

The father of the child is said to be unfit by reason of numerous arrests and one conviction for burglary and larceny. The record shows that these arrests and the conviction occurred eighteen to twenty years ago. Also, the father has been married four times and there was evidence that at one time at least, he had two wives. The father has another child by a former marriage, but the custody of this child is with its mother. The father contributes to the support of this child but was not well acquainted with the facts about a child which a father would ordinarily know. There was also evidence that the father had been fined for selling coal without a license. In the father's behalf, it was said that he earned $70 to $75 per week and sold vegetables in the summer and coal in the winter. The Giacopelli's have a five room apartment, which we must conclude, in the absence of a showing to the contrary, was a fit place for the minor child. The father owns a truck and car, and the mother also has her car. In addition, the father seems to be filled with the desire to have the care and love of his own son.

Illinois Revised Statutes, 1957, Chap. 3, Sec. 284, provides in part that "When both parents of a minor are living and are competent to transact their own business and are fit persons, they are entitled to the custody of the person of the minor and the direction of his education." In this case there is no contention that the parents are not competent to transact their own business. There was a time when the competency of the petitioner, Helen Giacopelli, might have been questioned, but at the hearing, there was testimony that she had recovered after the birth of the child and the superintendent of the Florence Crittenton Home was impressed with her maturity, even before the child was born. The only question there is as to the fitness of the parents.

450

■ As was said in People ex rel. Aldred v. Kurtz, 2 Ill. App. 567, "The law is well established that a parent has a right to the custody of his child against all the world unless he has forfeited that right or the welfare of the child demands that he should be deprived of it. Kulan v. Anderson, 300 Ill. App. 267; Stafford v. Stafford, 299 Ill. 438; Sullivan v. People, 224 Ill. 468; Cormack v. Marshall, 211 Ill. 519.

■ Unless the unfitness of the parent is established by clear evidence, fitness will be presumed and the custody of the child will be awarded to the parent. Kulan v. Anderson, supra; Cormack v. Marshall, supra; Wohlford v. Burckhardt, 141 Ill. App. 321."

■ ■ There was no finding that the natural parents were unfit but rather a finding that "the welfare of the child will best be served by denying the custody of the child to the petitioners . . ." The finding falls short of that required to deprive the natural parents of the parental right to custody. The burden of proving unfitness of petitioners was on the respondents. (People ex rel. Yarmulnick v. Hoff, 323 Ill. App. 535.)

In the case of Wohlford v. Burckhardt, 141 Ill. App. 321, the court said, "The court is only warranted in depriving the father of the custody of the child when the evidence discloses that the child, on his account, is destitute, abandoned or dependent, or that he is living an immoral life or in vicious or disreputable surroundings, or that he neglects or treats the child unkindly or cruelly, or may do this, or is wanting in good principles, or is illy adapted to the care of the child on account of defects in his mental or physical qualities, which prevent him from being a kind and affectionate father. The evidence in this case fails to establish any of these causes. No definite rule has been laid down as to what constitutes fitness in law that a parent must have to have the control of his child." Fol-

451

lowed in People ex rel. Yarmulnick v. Hoff, 323 Ill. App. 535.

■ Each case then must stand upon its own set of facts. There is nothing in this record to show ill treatment of the child by the father. His desire has always been to care for his son and assume his parental obligations. Evidence was introduced to show him unfit but as was observed, the trial court made no such finding and we find that there was no showing that the father was unfit.

Neither was there evidence that the mother was unfit. While the point was not in issue yet the court recognized in the Yarmulnick case that a voluntary relinquishment or abandonment of the right of custody by agreement is not in itself binding. We feel in the instant case that Mrs. Giacopelli's temporary relinquishment of her baby's custody should not be binding under the particular circumstances of this case.

Here, the child has not been in the Legaz home for any great length of time. We do not mean to intimate that they have not developed strong bonds of love for this child, for their participation in this appeal would signify to the contrary. But, as we said in In re Petition of Dickholtz, 341 Ill. App. 400, "the contest for control of the child's future between persons having no vested right in the child, having had little or no opportunity of developing love, affection, and attachment for the child, as in the instant case, as against the natural law which binds a mother to her child should be resolved in favor of the mother."

In People ex rel. Aldred v. Kurtz, 2 Ill.App.2d 567, the court said, "The rule that a parent has the right to the custody of his child against all the world, unless he has forfeited that right, was born of the natural desire of mankind to create and maintain a home; and as has been often said, the home is the foundation of society and civilization."

452

Appellants are the parents of this child whose custody is involved in this proceeding. They are responsible for his birth and are charged with his support and education. Notwithstanding the conduct of the mother before and after her son's birth and notwithstanding the father's delinquencies prior to the birth of his son this record discloses that these parents are so circumstanced that they can provide the necessities of life and properly maintain and educate their child. Their son is not a dependent or neglected child. His parents have not had his custody since his birth and their right to have that custody under the cited authorities is certainly superior to that of appellees.

We conclude that the order of the Circuit Court of Peoria county is contrary to the evidence and the order quashing the writ and remanding the child to the custody of the respondents is reversed and the cause is remanded with directions to issue the writ and return the child, Thomas Paul Fontaine Giacopelli, to the petitioners and plaintiffs in this cause.

Order reversed and cause remanded with directions.

DOVE, P. J. and McNEAL, J., concur.