Catherina Schneeman and Josepha Scheide, Appellees,
v. Alfonse Schneeman, Appellant.

Gen. No. 42,223.

Opinion filed December 30, 1942.

Ross, Berchem & Schwantes, of Chicago, for appellant.

Milton J. Sabath, of Chicago, for appellees.

Mr. Justice Friend delivered the opinion of the court.

Defendant appeals from two orders of the superior court, one making his mother-in-law, Josepha Scheide (hereinafter referred to as petitioner), a

party plaintiff in his wife's suit for separate main-
tenance, and the other granting petitioner temporary
custody of defendant's child without a hearing.

A summary of events preceding the entry of these
orders is necessary to an understanding of the issues
involved. Alfonse and Catherina Schneeman were
married March 16, 1935 at Washington, D. C. They
had one child, Brunhilda, born January 24, 1937. In
June of that year the mother and minor child left the
United States for Germany on a temporary visé, to
visit her parents, and Mrs. Schneeman has resided
there ever since and throughout these proceedings as
a German citizen. In February 1938 she wrote de-
fendant that she had no intention of returning to this
country, and later he received other letters informing
him that she would never live with him again and re-
questing him to obtain a divorce. The following Oc-
tober Mrs. Schneeman's parents arrived in the United
States for a visit with their two daughters and a son
who lived in Chicago. They brought with them the
minor child Brunhilda, and took up residence at the
home of Marie Nelson, one of their daughters. The
grandparents kept the child, but because of difficulties
arising over defendant's right to see and visit his
child, he filed a petition for a writ of habeas corpus in
November 1938 for the custody of Brunhilda. No
judgment was ever entered in that proceeding, but for
some reason not disclosed of record defendant dis-
missed his petition in March 1941, and has since then
assumed custody of his child.

Later defendant filed a suit for divorce in the city
court of Chicago Heights, and pursuant to service by
publication obtained a decree of divorce from his wife
May 17, 1941. The following month he was served
with summons in the pending separate maintenance
proceeding, and he thereupon moved to dismiss the
suit because of the divorce decree that had been en-
tered in the city court of Chicago Heights. Because
of plaintiff's contention that the decree was invalid,

the parties finally agreed that it be vacated and that the suit in Chicago Heights be dismissed. Following this order defendant filed his answer in the separate maintenance proceeding and also lodged a counter-claim for divorce, charging plaintiff with desertion on February 1, 1938.

On July 1, 1941 plaintiff's counsel filed a petition in her behalf, asking that the grandparents be given cus-tody of the child, alleging that plaintiff resided in Germany, where she had gone to visit her parents with defendant's consent, and that by reason of his refusal to sign necessary documents, her return to the United States was made impossible; that she had permitted her parents to bring the child to this country, and some time after her arrival here defendant seized the child and has since retained custody thereof.

Defendant's answer and counterclaim admitted the marriage, the birth of a child, and the departure of his wife for Germany on June 2, 1937, ostensibly for a visit with her parents, and averred that she had no intention of returning and remained there beyond the time limit specified in her visé, so that thereafter it was impossible for her to return to the United States; that notwithstanding her letters advising him of her refusal to again resume marital relations, he pre-pared affidavits necessary for her re-entry to this country, took them to the immigration office, and while there and during the examination told the officials of the letters which his wife had sent him, whereupon the authorities told him not to file the affidavits; and that in a later communication his wife directed him to take no further steps toward procuring her re-entry per-mit; defendant admitted that his wife's parents came to the United States on a visitor's permit, and brought with them the child Brunhilda, admitted that they had custody of the child for a period of time, that he had filed a petition for a writ of habeas corpus, and subse-quent to its dismissal assumed custody of the child; he averred that he was in a position to provide a home

for the child and denied that he was not a fit custodian thereof; he denied that plaintiff had at all times been ready and willing to resume cohabitation and averred that resumption of their marital relations was rendered impossible by his wife's conduct. By way of counterclaim he averred that his wife had wilfully deserted him on February 1, 1938 and by her letters indicated that she would never live with him again; that he has provided a good home for the child, where it is receiving proper support, care and maintenance.

No hearing was had or sought by plaintiff's counsel on the foregoing petition and answer, but December 22, 1941 Josepha Scheide filed a petition on her own behalf alleging that she was Brunhilda's grandmother, that she desired the child over the Christmas holidays, and prayed for her custody on December 23 and 24 and until the forenoon of December 25.

Defendant answered the petition, denying that she had the right to have the child for any period of time, averring that a state of war now exists between the United States and Germany, that he and the minor child are residents and citizens of the United States, but that his wife and Josepha Scheide are both citizens of Germany and alien enemies of the United States, the former actually residing in Germany and the latter being present in this country by sufferance of the immigration department on an extension of a visitor's visé issued prior to the outbreak of hostilities in September 1939; that Josepha Scheide was not a party to the suit and had no standing in court; and that neither his wife nor Josepha Scheide, as alien enemies, had the right to maintain an action in our courts; that defendant had arranged for a Christmas tree, purchased presents for the child and made plans for spending Christmas eve and Christmas day with Brunhilda.

Upon presentation of the petition and without any request on the part of counsel who represented petitioner, the court of his own initiative employed the

novel procedure of making the mother-in-law a party plaintiff in the separate maintenance suit by entering the following order: "On motion of the Honorable Court, Leave is hereby given Josepha Scheide to appear as additional plaintiff in this cause," and by another order, simultaneously entered, he awarded temporary custody of the child to petitioner from December 25 until December 28.

Neither of the plaintiffs has filed briefs herein, but during the pendency of the cause their counsel moved for dismissal of the appeal on the ground that since the separate maintenance proceeding had not been heard or determined "These orders are quasi-interlocutory," and therefore not appealable. Obviously the order which made Josepha Scheide a party plaintiff was simply preliminary to the subsequent order which gave her partial or temporary custody of the child, and was therefore properly appealable along with the order for temporary custody that followed. There is ample authority for holding that an order for the custody of a child, even though partial and temporary, is an appealable order. *Kulan v. Anderson,* 300 Ill. App. 267; *Jasper v. Tartar,* 224 Ky. 834; *Cormack v. Marshall,* 211 Ill. 519; *Gitsch v. Wight,* 61 Utah 175, 211 Pac. 705. In *Kulan v. Anderson,* Mr. Justice SCANLAN, speaking for the court and after reviewing the authorities, said that "the father, under the law of this State and the admitted facts, had the right to the sole custody of the child, and the action of the trial court in ordering that the aunt have the custody of the child for a certain period of time on alternate week-ends was a material abridgment of that right." Even though the case at bar was still pending on its merits, the entry of the order abridged the father's right to the sole custody of his child, and would have subjected him to a charge of contempt if he did not comply with it. In that respect it was like an order for temporary alimony, which was held to be

a final and appealable order in *In re Estate of Bell,* 210 Ill. App. 350. Moreover, the order was entered without a hearing as to the question of the father's fitness, notwithstanding his denial of the charge that he was an unfit person. Under the circumstances we hold that both orders were appealable, and plaintiffs' motion for dismissal of the appeal is therefore denied.

Since plaintiffs filed no brief on appeal we have no means of ascertaining what justification they would offer in support of the chancellor's orders. Plaintiffs' counsel, who appeared on oral argument of the cause, offered no suggestion, but stated that he relied on his motion to dismiss the appeal, and frankly admitted that if the motion were determined adversely to his clients he could offer no convincing reasons why the orders should be affirmed. During the colloquy which ensued between the court and counsel following the entry of these orders, the chancellor stressed the fact that the award of custody was only "temporary," and he seemed to resent defendant's notice of appeal from the court's decision by fixing the bond at $2,000, which was tenfold in excess of any possible costs that could have been assessed against defendant if he had lost the appeal, with the admonition that "if you can enjoy such luxuries [as an appeal], I think a bond of $2,000 is just about right." Obviously petitioner had no interest in the proceeding except the natural desire to obtain custody of her grandchild, but she was not entitled thereto as against the father, whose claim of fitness as a parent is unchallenged. (*Kulan v. Anderson,* 300 Ill. App. 267; *Cormack v. Marshall,* 211 Ill. 519.) If the court had desired to hear evidence as to defendant's fitness he could have done so under plaintiff's petition which was then pending. To make petitioner a party plaintiff was entirely unwarranted, and no valid reason or authority is suggested for so doing. The only reason advanced by the chancellor was that defendant could or should have arranged for

the re-entry of his wife to the United States so as to enable her to assert her rights in person, notwithstanding the express averments of the answer that she refused to come; and since she was not present, the chancellor was of opinion that petitioner therefore became a proper party plaintiff to defend the charges of defendant's counterclaim as plaintiff's "agent."

Defendant's objections to the chancellor's awarding custody of the child to petitioner, temporary or otherwise, are contained in the statement which the court permitted him to make in the course of the proceeding, as set forth in the abstract. He told the court that plaintiff's parents had been taking the child on Tuesday and Friday afternoons under an arrangement to which he consented; that the day preceding the hearing they had taken the child and not returned it; that the child's mind had been poisoned against its father to such an extent that it swore at him in German, and called him "a dirty rat" and "a dirty skunk." He complained that on occasions when he wanted to see the child he had been refused admittance to petitioner's home, and that on one occasion when he brought medicine which the doctor had prescribed for the child, petitioner refused to open the door or receive the medicine; and he offered to produce numerous witnesses who would testify that they would not leave the child in petitioner's custody "for one more minute," because of her foreign ideology.

As an additional ground for reversal it is urged that since both plaintiff and petitioner are German citizens, the former residing in Germany with an avowed intention of remaining there, and the latter present in the United States by sufferance of the federal government on an extended visitor's visé, and therefore enemy aliens, neither of them has the right to prosecute a suit to obtain affirmative relief from our courts during the period of hostilities. *Seymour v. Bailey,* 66 Ill. 288, and *Ex parte Colonna,* 314 U. S. 510, 62 Sup.

Ct. 373, decided in January 1942, are cited in support of this contention. We think it is a meritorious one.

For the reasons given, we are of opinion that the orders were erroneously entered and they are therefore reversed.

*Orders reversed.*

SULLIVAN, P. J., and SCANLAN, J., concur.